*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0132p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMES J. FILIAGGI,

*Petitioner-Appellant,*

*v.*

No. 04-3513

MARGARET BAGLEY, Warden,

*Respondent-Appellee.*

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-00054—Solomon Oliver, Jr., District Judge.

Argued: January 31, 2006

Decided and Filed: April 14, 2006

Before: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Jeffrey M. Gamso, Toledo, Ohio, for Appellant. Daniel R. Ranke, OFFICE OF THE ATTORNEY GENERAL, CAPITAL CRIMES SECTION, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey M. Gamso, Toledo, Ohio, Spiros P. Cocoves, Toledo, Ohio, for Appellant. Daniel R. Ranke, OFFICE OF THE ATTORNEY GENERAL, CAPITAL CRIMES SECTION, Cleveland, Ohio, for Appellee.

BATCHELDER, J., delivered the opinion of the court, in which GIBBONS, J., joined. COLE, J. (pp. 8-9), delivered a separate dissenting opinion.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Petitioner James J. Filiaggi, an Ohio death-row prisoner, appeals a district court order denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court granted a certificate of appealability ("COA") on two claims. In his first claim, Filiaggi argues that his jury waiver was invalid because he was incompetent at the time it was made and because the trial court did not engage him in an adequate colloquy. Second, Filiaggi argues that the trial court should have found him incompetent during his trial. Because we conclude that the Ohio Supreme Court reasonably interpreted the facts of the case and reasonably applied clearly established federal law, we AFFIRM the district court's denial of Filiaggi's petition for a writ of habeas corpus.

1

The story of Filiaggi's crime, which is not relevant to his petition, is set forth in the Ohio Supreme Court's opinion, *State v. Filiaggi*, 714 N.E. 2d 867, 870-72 (Ohio 1999). Our account begins with Filiaggi's first appearance in court.

On the first day of Filiaggi's trial, the stun belt used to restrain him as he was being transported to court misfired, resulting in what Filiaggi refers to as his "electrocution." Inasmuch as Filiaggi remains among the living, we will refer to the incident as an electrical shock. Afterward, Filiaggi was visibly shaken, his back was burned, and he suffered muscle spasms. The jail physician gave him ten milligrams of valium to ease his pain and to relax his muscles. Because of this incident, the court delayed the start of his trial until the afternoon. During the afternoon session, Filiaggi waived his right to a jury trial and elected instead to be tried to a three-judge panel. The next day, at the behest of defense counsel, the trial court ordered an evaluation of Filiaggi's competence to stand trial. Dr. Thomas Haglund examined Filiaggi that afternoon. The court held a competency hearing the following day, and Dr. Haglund testified, albeit it somewhat hesitantly, that Filiaggi understood the proceedings against him, and was able to consult with his counsel and to assist them in preparing his defense. The court therefore held that Filiaggi was competent to stand trial. Filiaggi's counsel disagreed and requested reevaluation. The court refused the request and the trial proceeded. The panel eventually found Filiaggi guilty and sentenced him to death.

After procedurally exhausting his direct appeal and post-conviction claims in the State of Ohio, Filiaggi filed a petition for writ of certiorari in the United States Supreme Court. The petition was denied. *Filiaggi v. State*, 528 U.S. 923 (1999). In January 2001, Filiaggi filed this petition in the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting ten constitutional violations. The district court denied the writ but granted a COA on Filiaggi's first two claims: whether he had knowingly, voluntarily and intelligently waived his right to a jury trial and whether he had been competent at the time of his trial. Filiaggi did not attempt to expand the COA in this court, and he appeals only the two claims for which the district court granted a certificate.

## I.     *Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply to Filiaggi's petition. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that AEDPA applies to petitions filed after April 24, 1996). Title 28 U.S.C. § 2254 sets out the requirements for a grant of habeas relief:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "[A] federal habeas court may not issue a writ under the unreasonable application clause simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (quotation omitted). If the state court decision does not squarely address the federal constitutional issue in question, but its analysis bears "some similarity" to the requisite constitutional analysis, we must carefully review both the record and the applicable law, and we may reverse only if we conclude that the state court's decision is contrary to or an unreasonable application of federal law. *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005).

When reviewing a district court's decision to grant or deny a writ of habeas corpus, we review *de novo* the court's legal conclusions and its own factual findings for clear error. *Smith v. Hofbauer*, 312 F.3d 809, 813 (6th Cir. 2002). Like the district court, we must presume that factual determinations made by the state court are correct, unless the habeas petitioner has rebutted them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## II. *Jury Waiver*

Filiaggi argues that his waiver of a jury trial was not knowing, voluntary or intelligent. Specifically, he asserts that, due to the electrical shock, he was not competent at the time of the waiver. He also asserts that his attorneys did not inform him that the waiver would make certain errors, such as evidentiary errors, essentially unreviewable on appeal. Finally, he argues that the trial court did not engage him in a sufficient colloquy.

Because the right to a jury trial is fundamental, *Duncan v. Louisiana*, 391 U.S. 145, 154 (1968), Filiaggi's waiver of that right – to be valid – must have been knowingly, intelligently and voluntarily made. *Edwards v. Arizona*, 431 U.S. 477, 482 (1981). The clearly established Supreme Court precedent at the time that Filiaggi waived his right to a jury trial, as well as at the time that the Ohio Supreme Court held that his waiver was valid, required only that the waiver be consented to by the government and sanctioned by the court, and that it reflect the "express and intelligent consent of the defendant." *Patton v. United States*, 281 U.S. 276, 312 (1930). As the Court explained a decade later:

> The Patton decision left no room for doubt that a determination of guilt by a court after waiver of jury trial could not be set aside and a new trial ordered except upon a plain showing that such waiver was not freely and intelligently made. If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942). Filiaggi therefore has the burden of demonstrating that he did not expressly and intelligently consent to waive a jury trial and that the Ohio Supreme Court's judgment to the contrary is either an unreasonable application of clearly established Supreme Court precedent or contrary to that precedent, or resulted from an unreasonable interpretation of the evidence presented to the state courts.

The Ohio Supreme Court held in *State v. Filiaggi*, 714 N.E. 2d 867 (1999), that Filiaggi's claims that his waiver was not valid were meritless. The court first held that there was no requirement that a trial court "interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial;" that the trial court's failure to make inquiry of Filiaggi as to

whether he understood the presumption of correctness that attached to the findings of the three-judge panel was therefore not error; and that the trial court's reading aloud of the written waiver and ensuring that it reflected Filiaggi's desire, was all that was required. *Id.* at 875. The court went on to hold that:

> The record supports defendant's claim that he was shocked by the stun belt; however, the record does not indicate the voltage level. The record also indicates that the trial judge stated: "The defendant is shaken, and he may be on Valium." The court took a recess directly after this incident for the remainder of the morning, and the court then reconvened at 1:30 p.m. Immediately upon reconvening, the parties addressed the subject of the waivers and made opening statements. Nothing indicates that defendant was unable to make a decision concerning the jury waiver. Defendant was represented by three attorneys, one of whom was a physician, and they never indicated that defendant would not be able to waive his right to a jury. Further, while defense counsel requested a mistrial and additional evaluations of defendant during the course of the trial alleging incompetence, they never asked the court to revisit the jury waiver issue. The record does not support defendant's claim that his waiver was not knowing, intelligent, and voluntary. Therefore, we overrule this proposition of law.

*Id*. Filiaggi makes three arguments to the contrary.

Filiaggi first argues that the electrical shock left him too disoriented to make a valid waiver of his right to a trial by jury. He cites two items in evidence: the trial court's observation that he appeared shaken and had taken Valium following the stun belt incident, and his own affidavit, made nearly a year after the stun-belt incident, which states that he was "severely disoriented" at the time of the waiver. The affidavit also states, "Had I been conscious of what I was doing at the time, I would have wanted further clarification from the Court of the consequences of my jury waiver." The record, however, supports the court's findings, and Filiaggi has not rebutted them by clear and convincing evidence.

Filiaggi next argues that his waiver was not intelligent and voluntary because his counsel failed to discuss with him the appellate consequences of waiving a jury trial. Specifically, he points to an affidavit of attorney James Burge, in which Burge stated that he did not explain to Filiaggi that "certain errors which might be deemed prejudicial by an appellate court if they occurred before a jury would be deemed harmless when they occur before a judge or a panel of three judges." Burge also stated that, to the best of his knowledge, none of Filiaggi's other attorneys had explained this point to Filiaggi.

We are aware of no Supreme Court precedent – and Filiaggi points to none – that conditions the validity of a jury waiver upon a defendant's understanding of the appellate process. Furthermore, Filiaggi has produced no evidence to suggest that he did not understand the basic workings of a jury trial. He does not allege that he was unaware of the substantive and procedural difference between a bench trial and jury trial when he gave his waiver. Furthermore, the evidence that he points to– his own affidavit and the affidavit of his attorney, James Burge – prove only that Filiaggi was unaware of the harmless error doctrine. Because evidentiary errors affected by the doctrine are, by definition, harmless, Filiaggi's lack of familiarity with the doctrine does not affect the validity of his waiver.

Finally, Filiaggi argues that the trial court did not engage him in a sufficient colloquy during the waiver proceeding. We have held, under the less-deferential pre-AEDPA standard, that "[t]here is no constitutional requirement that a court conduct an on the record colloquy with the defendant

prior to the jury trial waiver." *United States v. Martin*, 704 F.2d 267, 274 (6th Cir. 1983). In the case at hand, the trial court engaged in the following colloquy with Filiaggi:

> Court: And you waive your constitutional right to a jury trial?
>
> Defendant: Yes.
>
> Court: I have the same entry, "I, James J. Filiaggi, defendant in the above captioned cause, hereby voluntarily waive and relinquish my right to a trial by jury and would elect to be tried by a Judge of the Court in which said cause may be pending. I fully understand that under the laws of this State I have a Constitutional right to a trial by jury." And your signature appears there. Is that your signature?
>
> Defendant: Yes, sir.
>
> Court: Is it your desire to have the aggravated murder tried by three judges, Judge Kosmas [sic] Glavas and Judge Frank Horvath and myself, and it will require three judges to render a verdict in this matter and that is the one count. Is this your desire?
>
> Defendant: Yes.

Filiaggi points to no Supreme Court precedent – clearly established at the time the Ohio Supreme Court ruled that his waiver was valid or, for that matter, today – requiring any colloquy, much less more explicit colloquy than was conducted here. Filiaggi argues only that he was unaware of the consequences of his waiver on appeal; he does not claim that he did not understand that he was giving up the right to be tried by a jury.

The Ohio Supreme Court concluded that Filiaggi's waiver of his right to trial by jury was knowing, voluntary and intelligent. Filiaggi has failed to demonstrate that the court's judgment is contrary to or an unreasonable application of Supreme Court precedent that was clearly established at the time that judgment was entered, or that the Ohio Supreme Court's judgment was based on an unreasonable interpretation of the evidence presented in the state court proceedings. Accordingly, we affirm the district court's denial of habeas relief on this ground.

## III.    *Competence*

Having concluded that the State did not err in finding Filiaggi's jury waiver constitutionally sufficient, we now turn to the question of whether Filiaggi was competent to stand trial. Filiaggi argues that continued medical and psychological trauma from the stun belt shock required the trial court to conduct multiple evaluations of his competency.

Dr. Haglund, a clinical psychologist, evaluated Filiaggi's competence on the day following the stun belt incident. Filiaggi and Dr. Haglund discussed the stun belt incident, Filiaggi's incarceration, his court proceedings and his treatment for mental disorders. During that interview, Filiaggi was "mentally alert" and "oriented." *Filiaggi*, 714 N.E. 2d at 873. In addition, Dr. Haglund testified that Filiaggi was able to understand the nature and object of the proceedings against him, to consult with his lawyers and to assist in preparing and presenting his defense. As a result, the trial court concluded that Filiaggi was competent to stand trial.

Although Filiaggi's counsel challenged his competence a number of other times during the trial, they presented no additional information regarding his behavior until they filed a motion for a new trial. *Filiaggi*, 714 N.E. 2d at 874-75. In an affidavit filed with that motion, a psychiatrist who examined Filiaggi four days after the stun-belt incident stated that it was his "unequivocal opinion" that Filiaggi was incapable of participating in his own defense "for at least two days"

following his the shock. The psychiatrist described Filiaggi as " aggressive, confused, disoriented, and often nonresponsive to simple verbal questions . . . ." Filiaggi also submitted affidavits of two of his three attorneys stating that he was "foaming at the mouth" and often in "an agitated, catatonic stupor." The trial court gave little weight to the submissions and noted that at the time of his jury waiver, Filiaggi "was functioning with all of his faculties and with the blessing of all three of his lawyers." Order Denying Motion for a New Trial, January 17, 1996, at 2. Noting that defense counsel had repeatedly claimed that Filiaggi was incompetent to stand trial but had never brought to the court any evidence to support those claims, the court reviewed the evidence and found that Filiaggi was malingering.

> During [the second day of the trial] the State represented that the defendant attended the trial the day before, was functioning normally, and had his breakfast. The state argued that there was no representation from the defense that the defendant was not able to understand the conversations he had with Mr. Burge regarding coming to court or voluntarily waiving his absence. The State argued on the record that the defendant was able to visit with and confer with his minister, and that the defendant was functioning normally until it was time to come to court. The State related that the defendant ate at the appropriate time, and at 10:00 p.m., the night before requested an attorney call and engaged in a very lengthy conversation with his lawyer. Again, the defense did not refute these claims . . . .
>
> The court took testimony from a deputy that was guarding the defendant during the noon recess. The deputy informed the court that the defendant was doing stretching exercises, seemed to be fine, wasn't shaking, was in control of himself, and was conversing in a normal tone with his lawyers.
>
> The State of Ohio informed the panel at other occasions during the trial that the defendant was observed by corrections officers to normally partake in meals, showering, conversations with other inmates, conversations with other corrections officers, and request calls to, and converse with his attorney. Again these representations went unrefuted. The defendant needed a wheelchair at no time other than coming to court and being in court.

The Ohio Supreme Court, reviewing Filiaggi's claim as a matter of state law, noted Ohio's standard:

> An unqualified suggestion of defendant's incompetency to stand trial by defense counsel during trial, without additional objective indications such as, but not limited to, supplemental medical reports, defendant's conduct at trial or specific reference to defendant's irrational behavior or the like does not meet the "good cause shown" standard of R.C. 2945.37.

*Filiaggi*, 714 N.E. 2d at 874 (quoting *State v. Chapin*, 424 N.E. 2d 317, 318 (1981)). The court went on to conclude that the trial court had considered the totality of the evidence in determining that no new evaluation or hearing on competency was required, and that the trial court's conclusion was not "unreasonable, arbitrary, or unconscionable." *Id.* at 875.

The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent. *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966). To be adjudged competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *United States v. Dusky*, 362 U.S. 402 (1960) (per curiam). Finally, as we noted long ago in *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983), "the [*Pate*] Court did not prescribe a general standard for determining whether the trial court should resort to evidentiary proceedings." We

stated the test as requiring us to determine "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id.* at 467.

A determination of competence is a factual finding, to which deference must be paid. *Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. 162, 180 (1975). "[R]egardless of whether we would reach a different conclusion were we reviewing the case de novo, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001).

After carefully reviewing the record and the applicable law, we conclude that the Ohio Supreme Court's finding that Filiaggi was competent during his trial, although the result of an analysis of Ohio law rather than a constitutional due process claim, does not result in a judgment that is either contrary to or an unreasonable application of Supreme Court precedent clearly established at the time. The judgment does not unreasonably determine the facts in evidence, and Filiaggi has not rebutted the factual findings by clear and convincing evidence. *See* 28 U.S.C. §§ 2254(d)(2), (e)(1).

The trial court clearly considered the factors set out in *Drope* when it refused to grant Filiaggi an additional competency hearing and, later, a new trial. Although the evidence before the court was mixed, evidence in favor of finding Filiaggi incompetent came solely from Filiaggi's attorneys. Testimony from persons having custody of Filiaggi indicated that he was competent. Furthermore, Dr. Haglund's testimony regarding Filiaggi's mental state was sufficient to satisfy the requirements enumerated in *Dusky*. The Ohio Supreme Court considered – albeit not explicitly – the *Drope* factors as well as the standard for competence set out in *Dusky*, and concluded that Filiaggi had not carried his burden of demonstrating that he was not competent or that he was entitled to additional evaluations or hearings. We cannot say that a reasonable judge, considering all of the evidence that was before the trial court here relative to Filiaggi's claims of incompetence, "should have experienced doubt with respect to competency to stand trial," *Bordenkircher*, 696 F.2d at 467, and we therefore must affirm the district court's denial of habeas relief on this issue.

## IV. *Conclusion*

For the foregoing reasons, we **AFFIRM** the judgment of the district court denying the petition for a writ of habeas corpus.

_____

### DISSENT

_____

R. GUY COLE, JR., Circuit Judge, dissenting. At the time of Filiaggi's trial, it had been clearly established federal law for 40 years that a defendant whose competence is reasonably in doubt is constitutionally entitled to a competency hearing, even if he has not requested one. *See Drope v. Missouri*, 420 U.S. 162, 180 (1975); *Pate v. Robinson*, 383 U.S. 375, 376-77 (1966) (defendant had "raise[d] sufficient doubt as to his competence to require the trial court to conduct a hearing on its own motion"). We have interpreted *Drope* and *Pate* to require us to ask "[w]hether a reasonable judge, situated as the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to [a defendant's] competency to stand trial." *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983). The existence of evidence that the defendant is competent, of course, does not foreclose the necessity of a hearing on that very issue. *See Pate*, 383 U.S. at 385-86; *see also Drope*, 420 U.S. at 175 (holding refusal to have hearing unconstitutional despite "aspects of report suggesting competence").[1]

In this case, Filiaggi was accidentally shocked by a stun belt. As a consequence of his severe emotional reaction, he was analyzed the next day by a court-appointed forensic psychologist, Dr. Thomas Haglund. Although he testified that Filiaggi was competent at the time of the interview, Dr. Haglund noted that he "was rather hesitant about the trial continuing" and "certainly didn't think [Filiaggi] was able to continue the trial given the state he was in yesterday."

The psychologist also testified that Filiaggi's condition was unstable, subject to change "day-to-day," and, notably, that the need for "further examination" was indicated. *See also Drope,* 420 U.S. at 181 ("Even when a defendant is competent at the commencement of trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."). Yet when defense counsel—one of whom was a licensed physician and all of whom were, in the words of the Ohio Supreme Court, "officers of the court, [whose] assertions cannot be dismissed," *State v. Filiaggi*, 714 N.E.2d 867, 873 (Ohio 1999) —repeatedly[2] asked for further evaluation upon specific, verifiable, and relevant bases,[3] the trial court repeatedly denied the requests.

The court's predominant rationale was that Filiaggi was malingering, evidenced by the court's observation of Filiaggi and the statements of several guards. This conclusion is surprising,

_____

[1]The majority quotes *Drope* in apparent support of the proposition that a determination of competence is a factual finding, to which deference must be paid. While this proposition is true, *Drope* does not speak to this issue. Read in or out of context, the portion of *Drope* quoted by the majority stands for the proposition that even one salient fact may necessitate a competency hearing. *See Drope v. Missouri*, 420 U.S. 162, 180 (1975) (noting that any one factor, e.g., "a defendant's irrational behavior," may be sufficient to require the trial court to hold a hearing).

[2]According to the Ohio Court of Appeals, defense counsel asked for further evaluation twice on July 13 alone. The court added: "Over the course of the ensuing trial, defense counsel repeatedly moved for another examination and for a mistrial on defendant's alleged incompetence to stand trial. Each time, the court denied the motions." *State v. Filiaggi*, 1997 WL 778848 (Ohio Ct. App. Dec. 10, 1997). According to the Ohio Supreme Court, defense counsel asked for further evaluation twice on July 13, once on July 14, and added: "Defense counsel made similar motions concerning defendant's competence and requested a mistrial throughout the course of the trial." *State v. Filiaggi*, 714 N.E.2d 867, 873 (Ohio 1999).

[3]Defense counsel claimed, *inter alia*, that Filiaggi could not communicate with them, that he was not able to follow the proceedings, that he was behaving irrationally, and that he exhibited elevated vitals signs. The trial court never sought confirmation of these claims.

given that the aforementioned psychologist who evaluated Filiaggi, and whose evaluation formed the basis for the court's initial determination of competence, testified specifically that Filiaggi was not malingering. The psychologist credited Filiaggi's belief, for instance, that he was being shocked by electricity even after the belt had been removed.

To repeat: the only mental health expert[4] to observe and interview Filiaggi specifically rejected the basis for the trial court's refusal to further evaluate him. But in any event, although a defendant's observable behavior "might be relevant to the ultimate decision as to his [competence,] it cannot be relied upon to dispense with a hearing on that very issue." *Pate*, 383 U.S. at 385-86. Why, then, if this case is so straightforward, did these various state and federal courts rule against Filiaggi? The charitable answer is that, like the majority, they made a mistake: these courts conflated the factual issue of competency with the legal issue of due process.

The question presented by Filiaggi's last claim is whether Filiaggi was entitled, as a procedural matter, to a competency hearing. According to the Supreme Court and our sister circuits, this question must be separated from the ultimate, factual question of Filiaggi's competence to stand trial. *See Drope*, 420 U.S. at 175 n.10 (warning in this exact context against confusing "issues of fact that are here foreclosed and issues which, though cast in the form of determinations of fact, are the very issues [for] review"); *Pate*, 383 U.S. at 385-86; *McGregor v. Gibson*, 248 F.3d 946, 952-54 (10th Cir. 2001) (en banc) ("[A]n individual raising a procedural competency claim is held to a lower burden of proof than one raising a substantive competency claim. . . . [T]o prevail on a procedural competency claim petitioner need not establish facts sufficient to show he was actually incompetent or to show he was incompetent by a preponderance of the evidence."); *see also Battle v. United States*, 418 F.3d 1292, 1298 (11th Cir. 2005); *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004); *Walton v. Angelone*, 321 F.3d 442, 459 (4th Cir. 2003).

There was some evidence in the record that Filiaggi was competent. Under clearly established Supreme Court precedent, however, evidence of competence does not absolve a trial court of its obligation to hold a competency hearing. A state court that "fails to give proper weight to the information suggesting incompetence which came to light during trial," violates the Constitution. *Drope*, 420 U.S. at 179. This is not to say that every request for a competency hearing must be granted. *See, e.g., Maggio v. Fulford*, 462 U.S. 111, 115 (1993) (per curiam) (upholding state trial court's refusal to entertain defendant's "surprise, eleventh-hour motion for appointment of a competency commission"). But when two court officers, a medical doctor, and a court-appointed forensic psychologist all agree that a further competency evaluation is in order, and when such an evaluation is requested again and again on very specific bases (on behalf of a hallucinating defendant), a trial court judge is not free to focus exclusively upon whatever evidence suggests competence and otherwise turn a deaf ear. Such conduct directly contradicts a clearly established holding of the Supreme Court, *see Williams v. Taylor*, 529 U.S. 362, 412 (2000), and denies a fundamental tenet of due process to a defendant facing the severest sanction known to the civilized world.

For the preceding reasons, I respectfully dissent.

---

[4] As the majority notes, a private psychiatrist evaluated Filiaggi a few days later. Far from contradict Dr. Haglund's opinion that Filiaggi was not malingering, Dr. Paul Markovitz averred that in his "unequivocal opinion," Filiaggi had not been competent to participate in his own defense.