**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0706n.06
Filed: November 18, 2008

No. 07-1520

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,   )
             )
  Plaintiff-Appellee,    )
             )
v.             ) ON APPEAL FROM THE UNITED
             ) STATES DISTRICT COURT FOR THE
ANTHONY GIGNAC,     ) EASTERN DISTRICT OF MICHIGAN
             )
  Defendant-Appellant.   )

Before: CLAY and COOK, Circuit Judges; and OLIVER,[*] District Judge.

COOK, Circuit Judge. Anthony Gignac appeals his conviction and sentence for impersonating a foreign diplomat, 18 U.S.C. § 915, and attempted bank fraud, 18 U.S.C. § 1344. Almost five months after pleading guilty to both charges, Gignac moved to dismiss the attempted bank fraud count. At sentencing, the court denied the motion. Gignac appeals, and we affirm.

I.

The impersonation charges arose from two occasions when Gignac presented himself as Khalid bin al-Saud, a Saudi Arabian prince, as a means to obtain unauthorized credit at retail stores.

---

[*]Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Posing as Prince al-Saud, Gignac obtained the account number for a member of the royal family at Saks Fifth Avenue and charged approximately $11,300 in merchandise. Gignac used the same scheme at Neiman Marcus. There, he racked up $17,691 in charges after he complained about rude treatment, threatened to cancel a fictitious $70,000 order, and faked a call from the Saudi Arabian embassy demanding that the store apologize to Prince al-Saud.

The other charge, attempted bank fraud, stemmed from conduct occurring some weeks after the prior impersonation activities. True to form, Gignac again used his al-Saud alias to pressure a Citibank employee in the hope that the employee would allow him to withdraw $3.9 million from a made-up account.

Gignac pleaded guilty to both counts on October 12, 2006. That day, the government read the elements of each charge as set forth in its first superseding information, and the judge questioned Gignac about whether he understood and committed each element. When Gignac confirmed for the judge that he did, defense counsel objected to the entry of the pleas, arguing that the record lacked a factual basis for each plea. Gignac then countered counsel's efforts by spontaneously addressing the court to reaffirm his confessions of guilt. The judge accepted his pleas to each count.

Months later, at sentencing, Gignac moved to dismiss the bank fraud count, contending that if he genuinely believed a Citibank account meant for the Saudi Prince belonged to him, that belief would negate the fraudulent-intent element of the crime. The district court denied the motion and sentenced Gignac to concurrent 77-month sentences after applying an 18-point sentencing

enhancement for his attempt to inflict a loss of greater than $2.5 million and less than $7 million. U.S.S.G. § 2B1.1(b)(1)(J).

Gignac raises four issues on appeal. He asserts that the district court erred, both by denying his motion to dismiss and by accepting his pleas without sufficient factual bases.[1] He also presses a constitutional argument—that the court denied him due process of law because it should have sua sponte ordered a competency hearing. Finally, he claims that the court erroneously applied the sentencing enhancement. Each of these arguments lacks merit.

## II.

### A. Factual Bases

Gignac alleges that the district court erroneously accepted his pleas without factual bases. A court must determine that there is a "factual basis" for a guilty plea before it may enter a judgment. Fed. R. Crim. P. 11(b)(3). The standard of review is abuse of discretion. *United States v. Bennett*, 291 F.3d 888, 894 (6th Cir. 2002). Judges may draw factual bases from many sources, "including a statement on the record from the government prosecutors as well as a statement from the defendant." *United States v. Goldberg*, 862 F.2d 101, 105 (6th Cir. 1988). Ideally, the court will ask "the defendant to state . . . what the defendant did that he believes constitutes the crime . . . ."

---

[1]The government contends that Gignac waived his right to challenge the district court's denial of his motion to dismiss because he pleaded guilty without entering a conditional guilty plea pursuant to Fed. R. Crim. P. 11(b)(3). We bypass waiver and instead address the merits.

*United States v. Tunning*, 69 F.3d 107, 112 (6th Cir. 1995). But alternatively, a court may examine

admissions, *see United States v. Williams*, 176 F.3d 301, 313 (6th Cir. 1999), and the Presentence

Investigation Report ("PSR"), *see Bennett*, 291 F.3d at 897.

The record reveals ample bases for the court to have accepted each plea in its sound

discretion.

### Count I—Impersonating a Foreign Diplomat

Gignac impersonated a foreign diplomat if he:

> . . .with intent to defraud within the United States, falsely assume[d] or pretend[ed]
> to be a diplomatic, consular or other official of a foreign government duly accredited
> as such to the United States and act[ed] as such, or in such pretended character,
> demand[ed] or obtain[ed] or attempt[ed] to obtain any money, paper, document, or
> other thing of value . . . .

18 U.S.C. § 915. He admitted to this, but now claims there was no basis for the impersonation

charge. He maintains that inasmuch as his real name is Khalid bin al-Saud, he did not impersonate

anyone. Moreover, he insists that he could not impersonate a diplomat because the owners of the

accounts did not have diplomatic passports.

The record supplies several reasons to conclude that Gignac impersonated a foreign diplomat.

Most importantly, he conceded it:

THE COURT:         And then what did you do that you believe makes you guilty of the charges?

THE DEFENDANT:   The government states that I falsely assumed [the] identity of a foreign diplomat of the United States.

THE COURT:         . . . Do you agree that you did?

THE DEFENDANT:   Yes.

Moreover, the PSR confirms that Gignac presented himself as a Saudi envoy. He told State Department officials that "he had been issued special identification by the State Department as a member of the Saudi Mission, and had been issued a diplomatic passport from the Saudi Arabian embassy." That lie was the key to Gignac's scheme. By his own admission, he presented himself as a diplomat when he was not, and exploited that status to obtain unauthorized credit. This satisfies the impersonation requirement, regardless of his real name. The district court, therefore, did not abuse its discretion by accepting Gignac's guilty plea on the impersonation count.

### 2. Count II—Attempted Bank Fraud

Gignac's challenge to the attempted bank fraud count centers on a lack of fraudulent intent. He asserts that the court lacked a factual basis to find fraudulent intent because he did not know whether the account existed and believed that, if it did, it was his. Again, the record undermines his argument. Gignac now claims ignorance, but he previously admitted that no account existed and that the money was not his:

> I do stipulate to the government said the funds were not min[e]. They belonged to somebody else. They were placed in the account that I had no authorization to use the account, and as far as I am concern[ed] at this time never existed. I don't think the account was in existence or – but on that date Citibank was not holding money or didn't have permission to utilize the account.

Gignac's history of fraud convictions provides a further basis for fraudulent intent. The PSR summarized his prior schemes. In 1991, posing as a Saudi prince, Gignac defrauded a hotel and several companies out of approximately $10,000. In 1995, he used the al-Saud persona to defraud Syracuse University out of $16,000 and was convicted on two counts of wire fraud. Here, Gignac again used his tried-and-true alias to seek $3.9 million. And he did not merely provide a wrong account number; he sent a notarized request followed by a letter and three phone calls. A judge reviewing these details could easily conclude that it was just a more ambitious iteration of the same scam:

> The Court is satisfied that this scheme undoubtedly as planned by the defendant was going to be played out . . . . It was going to be carried out which is his initial request. It was to get his foot in the door, and the plan, given the fact that he didn't have an accurate account number, it was going to be some kind of interactive process using this attorney and his own communications to induce the financial institution to provide an accurate account number for the family that would ultimately permit it to disperse the money sought.

In light of Gignac's admission and his history of al-Saud schemes, the district court could readily infer fraudulent intent. Accordingly, the district court did not abuse its discretion by accepting Gignac's guilty plea on the attempted bank fraud count.

## B. Lack of a Competency Hearing

Gignac also presses a constitutional challenge—that due process required the district court to sua sponte order a competency hearing. But due process only requires a court to order a competency hearing when "'a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.'" *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir. 1983) (quoting *Pate v. Smith*, 637 F.2d 1068, 1072 (6th Cir. 1981)). The record and Gignac's performance at trial belie that concern. The court lacked "reasonable cause to believe" he was incompetent and was not required to order a competency hearing. *See United States v. Denkins*, 367 F.3d 537, 545 (6th Cir. 2004) (internal quotation marks omitted) (quoting 18 U.S.C. § 4241(a)).

To be competent, a defendant must possess "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). There are no "fixed or immutable signs" of competency, *United States v. Newton*, 389 F.3d 631, 637 (6th Cir. 2004) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)), but courts must focus on the defendant's *present* ability to stand trial, *Dusky*, 362 U.S. at 402.

The record depicts a defendant not only able to stand trial, but actively engaged in the proceedings. Gignac repeatedly exhibited characteristics of a competent defendant. He interacted

with the court and articulately answered questions about the charges, potential penalties, the judge's

sentencing discretion, his right to have charges presented to a grand jury, and his right to trial. *See*

*Filiaggi v. Bagley*, 445 F.3d 851, 857–58 (6th Cir. 2006) (identifying a defendant's alertness,

demeanor, and ability to understand proceedings as signs of competency). He even reassured the

court that he understood the process:

> Your Honor, I am a college educated person, and I understand what the government indictment reads. I know my involvement in this case, and I know the potential for punishment.
>
> I also know Ms. Roberts is representing me and is giving me her opinions on this case, both pleading guilty and having a trial where I would be able to win this case that the government has made out. It is impossible to fight these allegations, and because of that I want to accept responsibility for what I did, and save the government of expenses and plea for what I did, the bank fraud thing.

It is also significant that Gignac's own attorney never expressed any concern about her client's

competence, even though she disagreed with his decision to plea guilty. *See United States v. Acosta*,

No. CRIM.A. 03-74 JBC, 2005 WL 3939841, at *5 (E.D. Ky. Dec. 30, 2005) ("The failure of the

defendant or his counsel to raise the competency issue at the time of his plea is persuasive evidence

that there was no *bona fide* doubt as to [the defendant's] competency at that time."). Gignac showed

no hesitation or hint of incompetence as he smoothly navigated the process. He understood it so well

that he could even clarify his own counsel's statements:

> MS ROBERTS:   Unfortunately, the defendant is not satisfied according to the recitation of facts by Mr. Gignac or Mr. Al Saud[2].  He's stating Fadwa Al Saud was not a diplomat, nor was the husband, and while I know that Mr. Al Saud wants to enter a plea today, I'm not satisfied that he has, in fact, indicated to this Court that he somehow pretended to be any diplomat.  Maybe with some questions–
>
> . . .
>
> THE DEFENDANT:   Your honor, I would – I appreciate Ms. Roberts, but the account at the Saks Fifth Avenue is a family account, and I do not know Fadwa Al Saud's husband, who is the primary account holder.  His statu[s] is diplomat to the United States.  I do know the account that I utilized, Fadwa Al Saud is a woman in Saudi Arabia, not a diplomat in the United States who holds credit position in United States.

Gignac suggests only one ground for finding an abuse of discretion—that the trial court ignored his history of mental illness.  But while the court could consider that history, *Drope*, 420 U.S. at 180, it had little relevance to his competency *at the time of his plea*.  The bulk of that history occurred over twenty years earlier.  Gignac's ability to fully and intelligently participate in the hearing is far more probative of competency, and that displayed ability, without more, justified the court's failure to order a competency evaluation sua sponte.

## C.  Sentencing Enhancement

Finally, Gignac challenges the district court's use of an 18-point sentencing enhancement for his attempt to cause a loss of between $2.5 and $7 million.  U.S.S.G. § 2B1.1(b)(1)(J).  We review

---

[2]There existed throughout the proceedings some confusion about whether Gignac legally changed his name to al-Saud.

a sentencing court's loss calculation for clear error. *United States v. Younes*, 194 F. App'x 302, 315 (6th Cir. 2006). Gignac contends that the court erred because he did not intend to cause a loss.

Gignac's argument is meritless. He could only succeed if we found that the court clearly erred in finding fraudulent intent—a core element of attempted bank fraud. But we have already held that the court did not abuse its discretion in finding a factual basis for fraudulent intent. For the same reasons, it did not clearly err in finding fraudulent intent for purposes of sentencing.

III.

We affirm.