*705 SILER, Circuit Judge.
Anthony Hodges petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, from his conviction of first degree felony murder and aggravated child abuse in Tennessee. The district court denied his application for the writ and granted a certificate of appealability (COA). Hodges argues that his due process rights were violated when the state court improperly instructed the jury and the government violated its Brady obligations, which resulted in a fundamentally unfair trial. For the following reasons, we deny this petition.
I.
A.
In 1997, Hodges was convicted of both felony murder in the death of his stepdaughter that resulted from aggravated child abuse in violation of T.C.A. § 39-13-202(a)(2) and of aggravated child abuse and neglect of his step-daughter in violation of T.C.A. § 39-15-402(a)(l). The facts were summarized in State v. Hodges, 7 S.W.3d 609, 614-20 (Tenn.Crim.App. 1998). In pertinent part, the child died at the hand of either Hodges’s wife or Hodges and was in the care of Hodges when she died. Id. at 614.
Since the government could not prove “which person — if only one — actually administered the [fatal abuse],” Hodges was prosecuted under a felony murder theory. Id. As the child’s step-father, Hodges could be guilty of felony murder under Tennessee’s criminal responsibility statute, T.C.A. § 39-11-402(3), because he did not prevent the abuse that he witnessed or because he neglected the child in spite of her injuries. Hodges, 7 S.W.3d at 617-18, 620-21, 623.
Hodges’s defense was that he did not abuse the child or intend for her to die and did not call for medical attention for the child because he did not know she needed it and his wife, who had some medical training, said it was unnecessary.
The jury instructions included the elements for criminal responsibility of another:
The defendant is criminally responsible for an offense committed by the conduct of another if having a duty imposed by law or voluntarily under-taken to prevent the commission of the offense and acting with the intent to benefit in the proceeds or results of the offense or to promote or assist its commission, the defendant fails to make a reasonable effort to prevent the commission of the offense.
Id. at 627 (emphasis added).
Over Hodges’s objection, the jury was also instructed about a juvenile criminal statute, T.C.A. § 37-1-403, that requires individuals with knowledge of child abuse to report it to authorities. The instruction stated:
Any person having knowledge of or called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability or physical or mental condition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect shall report such harm immediately by telephone or otherwise to [state authorities]. Persons includes, but is not limited to neighbor, relative, friend or any other person.
Hodges, 7 S.W.3d at 627 (emphasis added).
During Hodges’s closing argument, defense counsel described the abuse that Hodges witnessed his wife inflict on his *706 step-daughter. Defense counsel stated, “Let’s just say it, right then, at that point, any man — any man in this jury and any woman in this jury would stop it. And that’s for you to go upstairs and decide what [Hodges] is guilty of, for being a coward and not stopping it.” Later in his argument, defense counsel described in greater detail the amount of abuse the child suffered. Then defense counsel stated:
I don’t like to say this about a client I represent, a man I’ve spent all this time with, but that’s spineless, that’s spineless that he didn’t save that baby’s life right there. That’s true. That was cowardice. But it’s not first degree murder. It’s not first degree murder. Being a coward and being weak doesn’t mean you desire what’s happened.
During rebuttal the government argued that either Hodges murdered the child or he was criminally responsible for his wife’s conduct. After discussing subsections one and two of the criminal responsibility statute, T.C.A. § 39-11-402, the prosecutor argued subsection three:
But look at what we really have here. Having a duty imposed by law. Remember in jury selection when I told you every person had the duty under law. Well, the Judge is going to charge you about the duties that people have to protect children from being abused. He’s going to tell you what the code says about that. And he’s going to tell you what, if you apply the law, that Anthony Hodges should have done, even if he hadn’t struck one blow to this child. Having a duty imposed by law and acting with the intent to benefit in the proceeds or results orto promote or assist in its commission, fails to make a reasonable effort to prevent the offense. If you believe [defense counsel’s] closing argument, you can convict Anthony Hodges of first degree murder as being criminally responsible. He didn’t do anything. If he really and truly sat there that night and listened to her beating this child and didn’t do anything, then he is criminally responsible for her conduct, even if everything else he did was correct.
(emphasis added). Summarizing the impact that the criminal responsibility statute had on the first degree murder charge, the prosecutor stated:
Some of you over here might think he’s criminally responsible. Some of you over here might think he did it. And some of you in the middle might think it’s a little of both. It doesn’t matter. You can still find him guilty of first degree murder. It doesn’t matter.
No portion of the juvenile criminal statute was discussed during closing arguments.
After finding Hodges guilty, the jury sentenced him to life imprisonment without the possibility of parole for the felony murder charge and the trial court sentenced him to twenty-five years for the aggravated child abuse charge to run concurrently with the life sentence. Hodges, 7 S.W.3d at 613.
B.
The Tennessee Court of Criminal Appeals affirmed his conviction and ruled that while the juvenile code instruction was “irrelevant” it was not reversible error because Hodges was not charged with violating that statute. Id. at 627-29. The Tennessee Supreme Court subsequently denied Hodges’s application for permission to appeal. Id. at 609.
Thereafter, Hodges’s petition for post-conviction relief in state court was denied. Hodges v. State, No. M2001-03068-CCA-R3-PC, 2002 WL 31730872, at *1 (Tenn. Crim.App.2002).
Hodges then began his habeas corpus petition pursuant to 28 U.S.C. § 2254, rais *707 ing numerous claims in pursuit of the writ including the impermissible jury instruction from his original appeal and a new Brady claim. During the course of the habeas proceedings Hodges discovered a potential Brady violation. The new evidence was a 2005 internal affairs report that cast doubt on the credibility of one of the police officers who testified against Hodges. Transcripts from interviews with officers in the report indicated that prosecutors had a poor opinion of the veracity of a detective that testified at Hodges’s trial. The district court allowed Hodges to include this new evidence in the record.
Subsequently, the district court adopted the facts found by the state appellate court and denied all of Hodges’s claims. Under a blanket grant of a COA, Hodges only appealed the jury instruction and Brady issues to this court.
II.
A COA, “even if improvidently granted, vests jurisdiction in the court of appeals.” Porterfield v. Bell, 258 F.3d 484, 485 (6th Cir.2001) (citation omitted). But a blanket grant of a COA for procedurally defaulted claims may require a remand so the district court can “engage in the reasoned assessment of each procedurally defaulted claim as required by” the Supreme Court. Id. at 487.
If a state court indirectly addresses a constitutional issue, “but its analysis bears some similarity to the requisite constitutional analysis, we must carefully review both the record and the applicable law, and we may reverse only if we conclude that the state court’s decision is contrary to or an unreasonable application of federal law.” Filiaggi v. Bagley, 445 F.3d 851, 854 (6th Cir.2006) (quotation and citation omitted).
The relevant Tennessee criminal responsibility statute, T.C.A. § 39-11-402(3), states:
Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.
The Tennessee juvenile code statute, T.C.A. § 37-l-403(a), contemporaneous with Hodges’s trial, states:
(a) Any person, including but not limited to, any
(8) Neighbor, relative, friend, or any other person;
having knowledge of or is called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability, or physical or mental con-, dition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect, shall report such harm immediately [to state authorities] where the child resides.
“[T]o assert a cognizable Brady claim, a habeas petitioner must show that (1) evidence favorable to the petitioner, whether exculpatory or for impeachment purposes (2) was suppressed by the government, and (3) the petitioner suffered prejudice as a result.” Apanovitch v. Houk, 466 F.3d 460, 474 (6th Cir.2006) (citations omitted). The Brady rule “only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial, and the duty to disclose applies even if the defense made no request.” Id. And Brady applies only to information that is “wholly within the control of the prosecution.” Coe v. Bell, 161 F.3d 320, 344 (6th *708 Cir.1998). Finally, a Brady claim can overcome procedural default. Apanovitch, 466 F.3d at 473-74.

III.

A.
The government argues that Hodges’s petition should be dismissed because the district court granted Hodges a blanket COA for all of his claims without an individualized assessment of each claim, which is required under Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).
In Porterfield we held the district court should give a “reasoned assessment of each proeedurally defaulted claim as required by Slack.” 258 F.3d at 487. But we also held that a COA “even if improvidently granted, vests jurisdiction in the court of appeals.” Id. at 485.
Hodges has not taken advantage of his blanket COA. Even though he raised ten issues in his habeas petition to the district court and was granted a COA for all of those issues, he is only proceeding with two issues. Since Hodges’s first claim is not proeedurally defaulted and his second claim can overcome procedural default, his petition will be adjudicated.
B.
Hodges claims his due process rights were violated when the trial court gave the juvenile code jury instruction because it allowed the jury to convict him on an impermissible theory of guilt, i.e., it relieved the government of proving the mens rea for murder. See Carella v. California, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (The Due Process clause requires the government to prove every element of the charged offense beyond a reasonable doubt). He relies on Boyde v. California, 494 U.S. 370, 379-80, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), where the Court held “that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside.” (citations and quotation omitted).
The Supreme Court has held that, “[b]e-yond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate ‘fundamental fairness’ very narrowly.” Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). Indeed, “[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court’s judgment is even greater than the showing required to establish plain error on direct appeal.” Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). The question “is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.” Id. (citations and quotations omitted).
And we expounded in Rattigan v. United States, 151 F.3d 551, 556 (6th Cir.1998): “The error in the instruction should be evaluated within the total context of the overall jury charge, the process of instruction, and the several components of the trial, including the testimony of witnesses, argument of counsel, receipt of exhibits, and instructions by the judge.”
Hodges argues that his defense would be viable but for the juvenile code jury instruction because that instruction turns his failure to procure medical attention for his step-daughter into a strict liability crime since the juvenile code creates a duty under the law to report child abuse. Hodges states that the government wanted the instruction to support its impermissi *709 ble criminal responsibility theory in closing arguments because when the juvenile statute is combined with the criminal responsibility statute it nullifies Hodges’s defense.
But no part of the juvenile code was mentioned in closing arguments. In fact, the government argued that Hodges should have •prevented the abuse. During closing arguments defense counsel stated that Hodges should have prevented his wife from abusing his step-daughter and called his client a “coward” and “spineless” for failing to do so. In rebuttal, the government argued that under the criminal responsibility statute if the jury believed defense counsel’s argument that Hodges, with a duty imposed by law, should have prevented the abuse then it should find him guilty of murder. Accordingly, there was nothing improper about the government’s argument.
However, when, as here, “the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis.” Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The state appellate court analyzed Hodges’s constitutional claim under a harmless-error standard and found that the juvenile code instruction was not erroneous and, at most, harmless error. Hodges, 7 S.W.3d. at 627-28.
And since the irrelevant instruction had “no illegible interlineation and no meaningless annotation” or was as “inapplicable and confusing” as other instructions that had required a new trial, it found “no reversible error in the trial court’s inclusion of this accurate and non-misleading, yet irrelevant instruction.” Id. at 628-29 (quotation omitted).
This careful review of “both the record and the applicable law” does not reveal “an unreasonable application of federal law.” Filiaggi, 445 F.3d at 854. The only place in the trial where the language of the juvenile code appears is in the jury instructions. Therefore, the instruction cannot be said to have “so infected the entire trial that the resulting conviction violates due process.” Kibbe, 431 U.S. at 154, 97 S.Ct. 1730. We cannot say that the state court’s application of federal law was “objectively unreasonable.” Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).
C.
Hodges claims the government violated its Brady obligations when it failed to disclose that one of its witnesses had a reputation for offering false testimony. Evidence of this witness’s reputation surfaced in a 2005 police internal affairs report concerning the witness. Since this report did not exist at the time of Hodges’s 1997 trial the government had no obligation to disclose it. Apanovitch, 466 F.3d at 474. A statement in the report indicates that the opinion of the witness’s veracity existed at the time of Hodges’s trial. But a person’s reputation for truthfulness is not information that can be “wholly” in the control of the government. Coe, 161 F.3d at 344. Since there was no Brady evidence Hodges’s claim fails.
AFFIRMED.