Scotty Allen GABBARD, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 93–SC–039–MR.

Supreme Court of Kentucky.

Sept. 29, 1994.

As Modified on Denial of Rehearing Dec. 22, 1994.

Marie Allison, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Lana Grandon, Carol Ullerich, Asst. Attys. Gen., Criminal Appellate Div., Frankfort, for appellee.

LEIBSON, Justice.

Scotty Allen Gabbard appeals as a matter of right his conditional plea of guilty but mentally ill to the charges of first-degree rape and first-degree assault. The issues addressed in this opinion relate to the proper procedures in a trial court's determination of a defendant's competency to stand trial.

The offenses to which Gabbard conditionally pled guilty occurred on August 2, 1988, when Gabbard was 17 years old. Gabbard has been incarcerated since that date. Two psychiatrists and one psychologist evaluated Gabbard five times before a competency hearing was held on February 14, 1992, at which time the trial court found him competent to stand trial. Gabbard conditionally pled guilty on July 13, 1992, and was sentenced in the Knox Circuit Court on December 17, 1992, to ten years for rape and twenty years for assault, sentences to be served concurrently.

In August 1988, Gabbard was evaluated by a child psychiatrist, Mohammad Mian, M.D., who reported that Gabbard had a speech impediment and was hard of hearing, was in the range of mild mental retardation, and his judgment and insight were somewhat limited. Dr. Mian felt that he was competent and, "[a]s far as his trial goes, he knows the difference between right and wrong and should be able to participate in his defense with the proper guidance through his attorney."

Gabbard was transferred from Juvenile Court to Knox Circuit Court in November 1988 and was indicted on December 9, 1988. He was evaluated April 11, 1989, by Comprehensive Care Center Staff Psychiatrist, Robert Dane, M.D. Dr. Dane noted that Gabbard might be hard of hearing and that he had a speech impediment. His diagnosis was probable mental retardation and probable impulsive personality. Dr. Dane found it extremely unlikely that Gabbard had a very sophisticated appreciation of right and wrong. He did not understand the function of the court and was not sure what attorneys or juries did. Dr. Dane thought it unlikely that Gabbard would be of assistance to his attorney in formulating a defense and it was unlikely he really understood the nature of the charges against him or the possible consequences. Dr. Dane found Gabbard was "probably *incompetent* to stand trial at this time" and recommended psychological testing, intelligence testing and a review of records from a 1988 hospitalization.

On January 10, 1990, the trial judge requested Dr. Dane to re-evaluate Gabbard to clarify his incompetency determination. Dr. Dane's January 12, 1990, letter reporting on the evaluation was consistent with his prior report, and he stated that Gabbard was severely limited intellectually which would not improve. The report concluded: "Once again, I will restate with greater confidence that he is incompetent to stand trial for the charges against him."

On February 5, 1990, the Commonwealth moved, pursuant to Dr. Dane's reports regarding Gabbard's incompetency, to have Gabbard confined at the Kentucky Correctional Psychiatric Center (KCPC) to be ex-

amined over an extended period to determine his mental condition. Two days later, defense counsel filed a motion to dismiss the indictment due to Gabbard's incompetency on the grounds he had twice been found incompetent and his intelligence was not going to improve.

On February 9, 1990, the court ordered Gabbard to be confined at KCPC for at least 45 days to observe his condition and determine his competency to stand trial. In a May 15, 1990 report, Leonard E. Miller, Psy. D., Licensed Psychologist at KCPC, stated that Gabbard had a hearing impairment and a speech impediment. Tests indicated that Gabbard was at the high end of the Mild Mental Retardation to the low end of the Borderline range of intellectual functioning. However, due to Gabbard's hearing impairment, Miller stated a number of times that all test results should be viewed with caution. KCPC tried to obtain a hearing aid for Gabbard while he was there, but was unable to do so. It was Miller's opinion that Dr. Dane's reports regarding Gabbard's incompetency to stand trial were, "for the most part," due to Gabbard's hearing impairment. Miller said he could not make a determination of Gabbard's competency to stand trial without a hearing aid, but did say that Gabbard indicated an awareness of the adversarial nature of the judicial system and the possible outcomes of his legal situation, and knew that he would have to assist his attorney in his defense. Miller stated Gabbard's major difficulty appeared to be his hearing impairment and recommended further testing with a hearing aid. The previous psychological reports all discussed Gabbard's hearing impairment, but no one had yet recommended a hearing aid.

In December 1990 or January 1991, Gabbard received a hearing aid. On January 9, 1991, the trial court ordered a re-examination at Cumberland River Comprehensive Care Center to review the findings of Leonard Miller.

Dr. Dane evaluated Gabbard a third time on May 18, 1991. He noted that Gabbard had not improved in intelligence and "is still functioning at about Borderline intellectual range and this is a constant." He went on to say:

> As previously stated, he's not too bright and does not understand the refinement of the law. Nonetheless, he is appreciative that the prosecuting attorney will try to convict him and his attorney will try to defend him. He says the judge sits up there on the bench and puts things off which is apparently his experience and also hands down fines and sentences. The jury has something to do with one's guilt and how much time people get.

> Again, he is not a very sophisticated young man but at this time, he does meet the criteria for competency to stand trial.

> It is hoped this young man can be brought to a speedy trial. It is my understanding he has been detained for almost 34 months at this time and it should be ascertained whether or not he is in truth guilty of having committed the offense for which he is now charged.

The case was subsequently assigned for call on a number of days, and on September 13, 1991 it was set for trial on January 8, 1992. Two days before the trial date, the Commonwealth moved for a hearing on Gabbard's competency to stand trial.

A competency hearing was held February 14, 1992 at which the Commonwealth relied on the last report (May 18, 1991) of Dr. Dane. Defense counsel objected to the court's sole consideration of Dr. Dane's written report without the defendant being able to cross-examine the psychiatrist. Counsel pointed out that there were variances in a number of the evaluations and that Dr. Dane's previous reports finding Gabbard incompetent did not appear to be based solely on his hearing disability. The court found Gabbard competent to stand trial. As Gabbard had a new attorney, the trial was set for July 1992.

On July 10, 1992, Gabbard moved for a psychiatric examination to determine his present competency. On July 13, 1992, the Commonwealth made an offer of guilty but mentally ill and on that same day Gabbard moved to enter a conditional plea of guilty but mentally ill. His sentencing hearing was

held November 13, 1992 and judgment was entered December 17, 1992.

The Commonwealth contends that the issues Gabbard raises were not preserved for appellate review by his conditional guilty plea because the guilty plea proceedings did not set forth the specific issues being reserved for review and because Gabbard's motions regarding his incompetency were never ruled on by the trial court.

RCr 8.09 allows a defendant, with the approval of the court, to enter a conditional plea of guilty, "reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified trial or pretrial motion." Gabbard's plea is captioned, in writing, "Conditional Plea of Guilty but Mentally Ill." At Gabbard's sentencing hearing, defense counsel said, "I would simply raise the same objections that I raised prior to the entry of the plea and incorporate all those objections raised by motion and preserved in the conditional plea by reference." The prosecutor indicated he was somewhat unclear regarding the motions to which defense counsel was referring, and defense counsel said, "the motions I am referring to are those motions regarding the defendant's competency that were preserved for appellate review; I think there were three of them, preserved for appellate review, in those proceedings." The prosecutor responded, "Okay." The trial court later asked if there were any legal cause why sentence should not be imposed, to which defense counsel replied, "None your Honor, other than as previously stated." The court replied, "All right."

■ In the record there is no transcript of the hearing wherein the guilty plea was entered; however, it is clear from the transcript of the sentencing hearing that the Commonwealth and the trial court were aware of the objections raised prior to the entry of the conditional plea. The motions regarding Gabbard's competency were clearly referred to, the trial court acknowledged the reference and then found Gabbard mentally retarded, but not incompetent, and sentenced him. Although not specifically overruling Gabbard's motions regarding his incompetency to stand trial, in finding him

guilty and sentencing him, the trial court, of necessity, overruled those motions. Thus, although inartfully done, issues raised in Gabbard's motions relating to his competency to stand trial were preserved for appellate review by the conditional plea proceedings.

Gabbard contends he was denied due process by the failure of the trial court to conduct a competency hearing which allowed for cross-examination of the expert. Dr. Dane was not present at the hearing and Gabbard objected to the trial court's reliance on the report without Gabbard being able to cross-examine the psychiatrist and objected again in a later motion.

The Commonwealth contends this issue is not preserved or is waived by Gabbard. Gabbard objected to being unable to cross-examine Dr. Dane. He did not challenge, specifically, use of the reports, but he clearly objected to the court's reliance on them without the doctor's presence. The Commonwealth claims Gabbard was presumed competent, and, because Gabbard bore the burden of proving he was incompetent to stand trial under *Mozee v. Commonwealth*, Ky., 769 S.W.2d 757, (1989), if he wanted Dr. Dane to testify he bore the responsibility of seeing he was present at the competency hearing. He was not precluded from calling the doctor as a witness, and he did not attempt to subpoena Dr. Dane.

KRS 504.080(4) mandates the procedure in these circumstances. It states:

> The examining psychologist or psychiatrist *shall* appear at any hearing on defendant's mental condition unless the defendant waives his right to have him appear. (Emphasis added).

Gabbard objected to the trial court's reliance on the report without Gabbard being able to cross-examine the psychiatrist. Gabbard did not waive his right to have the examining psychiatrist appear. Dr. Dane did not appear.

■ KRS 504.100(3) requires the trial court, if it has reasonable grounds to believe the defendant is incompetent to stand trial, to appoint a psychiatrist or psychologist to report on the defendant's competency. After the filing of a report, "the court shall hold a

hearing to determine whether or not the defendant is competent to stand trial." KRS 504.100(3). The variation in the reports and the qualified final report on Gabbard's competency did indicate further inquiry into his competency was necessary. Whether reasonable grounds existed to hold a competency hearing is not an issue in this case because the trial court apparently believed there were reasonable grounds since it did hold a competency hearing.

■ The conduct of the hearing is at issue. The United States Supreme Court has held that "due process requires an evidentiary hearing whenever there is sufficient doubt of competency as to require further inquiry on the question. *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)." *Gilbert v. Commonwealth*, Ky., 575 S.W.2d 455, 456 (1978). When a hearing is held, it must be an *evidentiary* hearing with the right to examine the witnesses. As the Kentucky Court of Appeals stated in *Conley v. Commonwealth*, Ky.App., 569 S.W.2d 682, 685 (1978): "If a hearing had been held, the appellant would have had the right to examine the psychiatrist."

■ Whether a defendant is competent to stand trial is a threshold question which must be answered before the defendant can be tried or sentenced. If there is sufficient cause to hold a competency hearing, which the trial court found there to be in this case, then KRS 504.080 lays out requirements for the hearing. One of those requirements is that the examining psychiatrist be present. That requirement was not met. Which party bears the burden of proof at the competency hearing is extraneous.

■ Looked at another way, the presumption that a defendant is competent to stand trial disappears when there are reasonable grounds to hold a competency hearing. While Gabbard continues to bear the ultimate burden at a competency hearing of proving he is incompetent to stand trial, *Mozee, supra*, there is no presumption that he is competent and the Commonwealth cannot rely on Dr. Dane's report without giving Gabbard the right to cross-examine him.

Accordingly, we vacate Gabbard's conditional plea due to the denial of his right to have the examining psychiatrist appear at the hearing to determine his competency to stand trial.

■ Gabbard also claims he was denied due process by the trial court's failure to properly follow the procedures of KRS Chapter 504 when he was incarcerated under indictment for four years while being evaluated and reevaluated as to his competency to stand trial. The Commonwealth contends this issue is also not preserved by Gabbard's conditional guilty plea. For the reasons stated above, this error was preserved for appellate review by the conditional plea proceedings.

Kentucky statutes lay out an orderly system for the treatment of persons whose competence to stand trial is in question. As previously stated, KRS 504.100 requires a court to appoint a psychiatrist or psychologist to examine, treat and report on the defendant's mental condition if there are reasonable grounds to believe the defendant is incompetent to stand trial. After the filing of a report, "the court *shall* hold a hearing to determine whether or not the defendant is competent to stand trial." KRS 504.100(3). (Emphasis added.)

KRS 504.110 sets forth the procedures which must be followed if the court finds the defendant competent or incompetent to stand trial. If there is a substantial probability the defendant will attain competency in the foreseeable future and the defendant is charged with a felony, the court shall commit the defendant to a forensic psychiatric facility and within ten days of that time, "the court shall hold another hearing to determine whether or not the defendant is competent to stand trial." KRS 504.110(1). If there is no substantial probability the defendant will attain competency in the foreseeable future, the court "shall conduct an involuntary hospitalization proceeding under KRS Chapter 202A or 202B." KRS 504.110(2). "If the court finds the defendant competent to stand trial, the court shall continue the proceedings against the defendant." KRS 504.110(3).

The Commonwealth argues that the *court* never found Gabbard incompetent after Dr. Dane's reports, therefore the provisions of KRS 504.110 were never triggered. However, the provisions of KRS 504.100 were triggered. After receiving Dr. Dane's two reports indicating Gabbard was incompetent, the trial court was required to hold a hearing to determine whether or not he was competent to stand trial. KRS 504.100(3). After such a hearing, KRS 504.110 would then provide the procedures to follow depending on whether Gabbard was found competent or incompetent.

 These statutes are mandatory. As we stated in *Clark v. Commonwealth*, Ky., 591 S.W.2d 365, 366 (1979), "[t]he General Assembly has directed the procedure, and it should be followed by the trial courts." After the filing of a report, KRS 504.100(3) states the court *shall* hold a hearing. The statutes do not require defense counsel to file a motion for such a hearing. They state precisely what process is due under the law.

Nevertheless, trial judges cannot be aware of everything happening in every case before them and cannot be required to *sua sponte* hold competency hearings. Gabbard's counsel could have expedited matters by filing a motion calling the matter to the trial court's attention after the initial determination of incompetency and pointing out the statutes which laid out the procedure to be followed.

However, as we have said in a number of cases, either the "reasonable grounds [to hold a competency hearing] must be called to the attention of the trial court by the defendant or must be so obvious that the trial court cannot fail to be aware of them, in which latter case a *motion* for a hearing on mental capacity is not required." *Via v. Commonwealth*, Ky., 522 S.W.2d 848, 849 (1975). *See also, Matthews v. Commonwealth*, Ky., 468 S.W.2d 313 (1971); *Pate v. Commonwealth*, Ky., 769 S.W.2d 46 (1989).

Dr. Dane's first report, dated April 11, 1989, indicating Gabbard was incompetent to stand trial, was received by the trial judge on May 18, 1989. The case was on for call a number of times after May 18, 1989, and was set for trial on January 10, 1990. On January 10, the trial court asked Dr. Dane to re-examine Gabbard.

 When the trial court received the April 11, 1989, report stating Gabbard was incompetent to stand trial, the "reasonable grounds" to hold a competency hearing were then "so obvious" the trial court could not have failed to be aware of them. The trial court should have held a competency hearing at that time, *sua sponte*, and then followed the procedures laid out in KRS 504.110. A motion requesting a competency hearing was not required.

 The trial court erred in not holding an evidentiary hearing on the question of Gabbard's competency to stand trial after receiving Dr. Dane's first report. If a trial had been held, "[t]he error . . . requires that a new trial be granted." *Via, supra* at 850. (Citations omitted.) Gabbard was not tried, but he did plead guilty after being improperly denied his due process rights. Accordingly, we vacate Gabbard's conditional plea on this issue as well.

Gabbard's final claim of error is that he was denied due process by the failure of the trial court to order a current psychiatric evaluation before the entry of the conditional guilty plea and at sentencing. Since we are vacating Gabbard's conditional plea on other grounds, we do not reach this issue.

Accordingly, we vacate Gabbard's conditional plea of guilty but mentally ill and remand the case to Knox Circuit Court for an evidentiary hearing and determination of Gabbard's present mental competence to stand trial. If Gabbard is found mentally competent, he may be tried or plead anew. If he is found incompetent, he shall be dealt with as provided in KRS 504.040(2).

All concur.