Wiley GIBBS, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2004–SC–000286–MR.

Supreme Court of Kentucky.

Sept. 21, 2006.

As Modified Dec. 21, 2006.

**850**

Thomas M. Ransdell, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Gregory C. Fuchs, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

Appellant, Wiley Gibbs, appeals as a matter of right[1] from the final judgment of the Logan Circuit Court. A jury found Gibbs guilty of five (5) counts of incest, one (1) count of sodomy in the second degree, four (4) counts of rape in the second degree, and two (2) counts of sexual abuse in the second degree, all with respect to the first victim, Jane Doe.[2] He was also found guilty of one (1) count of sexual abuse in the first degree and three (3) counts of sexual abuse in the second degree with respect to the second victim, Sarah Smith. Gibbs was sentenced to the maximum on each count, all to be served consecutively for a total of 105 years of imprisonment.

Appellant is 65 years old and has an IQ of 66, which is generally classified as being mentally retarded.[3] He was married to Linda Gibbs for almost 26 years and they raised three children. Appellant is the father of Jane Doe. The other victim is Jane's friend, Sarah Smith. In January 2002, Jane Doe told a girl who attended her church that Appellant was sexually abusing her. This girl told the youth pastor, who eventually convinced Jane to tell her mother. Appellant was then forced to leave the home. The allegations were reported to the police on February 11, 2002. Appellant gave a videotaped statement to police, admitting to having abused his daughter and also having sexually touched Sarah Smith.

Appellant was indicted by a Logan County Grand Jury on April 2, 2003, and charged with 99 criminal offenses. On June 5, 2003, the court entered an order for a psychiatric examination of Appellant. The record does not reflect that any further hearing was held thereon but there was no objection made by Appellant to continuing with trial. On January 22, 2004, the case went to trial. Jane Doe testified that she was seventeen years old, and that she had been sexually abused by Appellant on a regular basis from the age of seven to fifteen. She indicated that she was sexually abused in the bathroom, her bedroom, and Appellant's bedroom. She also stated that Appellant had sexual intercourse with her in his bedroom, her bedroom, and the bank where Appellant and

---

1. Ky. Const. § 110(2)(b).

2. Jane Doe and Sarah Smith are pseudonyms used to protect the anonymity of the victims.

3. Appellant does not indicate the guidelines for this determination.

his wife worked as custodians. She further testified to being orally sodomized on a less frequent basis.

Sarah Smith testified that Appellant's wife babysat her in the Gibbs' home since she was six years old. She testified that she was subjected to sexual contact by Appellant in his home and vehicle when she was between the ages of thirteen and fifteen.

Several other witnesses also testified at trial regarding the sexual abuse. Detective Kenneth Edmonds testified that he interviewed Jane Doe a couple of days after the allegations of abuse. He also interviewed Appellant at the police department, and Appellant made an admission to the police as to some instances of misconduct. Dr. Todd Douglas, a family practitioner in Morgantown, testified that he examined Jane Doe and found evidence of an old scar on her posterior fourchette. He also found irregularities in her hymen. At the close of the Commonwealth's case Appellant's motion for a directed verdict was denied.

Appellant's wife, Linda Gibbs, testified for the defense. She testified that Appellant had a full time job as well as a part time job that required an additional fifteen to twenty hours of work per week. She further testified that five to six people were living in the Gibbs' home. At various times, her grandmother and Jane's friend, Lucy Puckett, lived with the Gibbs family and stayed in Jane's room with Jane. She testified she could not see how Appellant could have abused Jane as often as Jane stated.

Appellant also testified and admitted sexually abusing and having intercourse with Jane. However, he denied that the misconduct occurred as many times as Jane alleged. He also admitted to touching Sarah Smith four or five times.

Appellant's renewed motion for directed verdict was sustained as to some counts and overruled as to the others. Concerning Jane Doe, the trial court instructed the jury on six (6) counts of incest, two (2) counts of sodomy in the second degree, four (4) counts of rape in the second degree, four (4) counts of rape in the third degree as lesser included offenses of rape second, and two (2) counts of sexual abuse in the second degree. With respect to Sarah Smith, the court instructed the jury on one (1) count of sexual abuse in the first degree and four (4) counts of sexual abuse in the second degree. The jury found Appellant guilty of five (5) counts of incest, one (1) count of sodomy in the second degree, four (4) counts of rape in the second degree, and two (2) counts of sexual abuse in the second degree with respect to Jane Doe. The jury found Gibbs guilty of one (1) count of sexual abuse in the first degree and three (3) counts of sexual abuse in the second degree with respect to Sarah Smith. The jury was instructed that the aggregate sentence imposed on Appellant could not exceed twenty (20) years. Despite this instruction from the judge, the jury recommended the maximum sentence on each count. They further recommended that all felony offenses be served consecutively for a total of 105 years and this recommended sentence was imposed by the trial court's final judgment.

Appellant raises several issues on appeal, and each will be addressed in turn. Appellant first argues that the trial court's failure to hold a competency hearing following the court-ordered evaluation for competency to stand trial violated Appellant's right to procedural and substantive due process. We begin by noting that Appellant did not request a competency hearing following the competency evaluation. However, Appellant now relies on

*Gabbard v. Commonwealth*[4] and claims this issue is preserved because KRS 504.100 places an affirmative duty on the trial court to hold an evidentiary hearing following a competency evaluation.[5] KRS 504.100(1) requires a trial court to appoint a psychologist or psychiatrist "to examine, treat and report on the defendant's mental condition" whenever "the court has reasonable grounds to believe that the defendant is incompetent to stand trial." KRS 504.100(3) states that after such a report is filed, "the court shall hold a hearing to determine whether the defendant is competent to stand trial."

■ We note that in the case at bar, the psychologist found Appellant was competent to stand trial. Appellant's competency evaluation determined that Appellant was mentally retarded and he had a depressive disorder. Despite this, the evaluation further determined Appellant did not suffer from a mental condition which impaired his ability to understand the requirements of the law with regard to his sexual behavior or prevented him from conforming his behavior to the requirements of the law. The expert also concluded that although Appellant may require extra time to understand legal concepts and terminology, he was capable of participating rationally in his own defense and working with his attorney on his behalf. In *Gabbard,* expert reports indicated Defendant was incompetent.[6] This Court held that based on the finding of incompetence in *Gabbard,* the trial court was required to hold a hearing to further

determine whether or not he was competent to stand trial.[7]

Results of Appellant's competency evaluation are similar to those in *Mills v. Commonwealth.*[8] In *Mills,* the defendant was found competent to stand trial, but on appeal, relied on the trial court's order for a competency evaluation to show that he was incompetent to stand trial and deserved a competency hearing. This Court held that due to the competency evaluation's determination of competence, the trial court was not required to further hold a hearing.[9]

■ This Court found that the standard of review in such a case is, "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial."[10] Similar to *Mills,* Appellant relies on the trial court's order directing a competency hearing to show that there was reasonable grounds to believe he was incompetent and therefore, after the Kentucky Correctional Psychiatric Center (KCPC) report, a hearing should have been held on Appellant's competency. However, that report specifically concluded that Appellant was competent to stand trial. Furthermore, in a pretrial hearing, when the court asked whether there was any need to conduct a competency hearing, Appellant's counsel advised the trial court that the evaluation indicated that Appellant was competent and there was no need to hold a hearing at that time. Counsel made no further objection to continuing with trial. "[T]rial judges cannot

4. 887 S.W.2d 547 (Ky.1994).

5. *See id.*

6. *Id.* at 552.

7. *Id.*

8. 996 S.W.2d 473 (Ky.1999).

9. *Id.*

10. *Id.* at 486 (Ky.1999) (*quoting Williams v. Bordenkircher,* 696 F.2d 464, 467 (6th Cir. 1983)).

be aware of everything happening in every case before them and cannot be required to *sua sponte* hold competency hearings."[11] This Court has said in a number of cases that "reasonable grounds [to hold a competency hearing] must be called to the attention of the trial court by the defendant or must be so obvious that the trial court cannot fail to be aware of them."[12]

▬ Nevertheless, it is difficult to ignore what appears to be a mandatory hearing requirement in KRS 504.100(3). The hearing need not be complex, but the Commonwealth and the defendant must be given an opportunity to present evidence on the issue of competency and an opportunity to cross-examine the psychologist or psychiatrist who prepared the report. While better practice is to hold such a hearing prior to trial, a retrospective competency hearing is permissible when circumstances with respect to time and witness availability "are adequate to arrive at an assessment that could be labeled as more than mere speculation."[13]

In this case, Appellant's trial was in 2004 and we are unaware of any reason that a proper hearing could not be held. Accordingly, we remand this case to the trial court for a hearing as required by KRS 504.100(3) which shall proceed in accordance with *Thompson v. Commonwealth.*[14]

Appellant's second argument is that the trial court erred in not reading each instruction to the jury in its entirety and that the oral instructions differed from the written instructions. During the reading of jury instructions, the trial court read the instruction for a particular offense. Some offenses contained multiple counts, and the instructions for each count varied only in the location of where the offense occurred. For some of the multiple counts, the trial court decided not to re-read the instructions, but instead, indicated that the instruction was the same as the prior instruction with the exception as to where the offense occurred.

RCr 9.54(1) provides, "It shall be the duty of the court to instruct the jury in writing on the law of the case, which instructions shall be read to the jury prior to the closing summations of counsel. These requirements may not be waived except by agreement of both the defense and the prosecution." Appellant claims that because there was no agreement to waive the requirement that the instructions be read to the jury or that the instructions not be put into writing, this issue is preserved. RCr 9.54(2) states as follows:

No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

▬ Failure to comply with subsection (2) of RCr 9.54 has been consistently held to prohibit review of alleged error in instructions because of the failure to properly preserve the claimed error.[15] It is the

11. *Gabbard,* 887 S.W.2d at 552.

12. *Id.* (*quoting Via v. Commonwealth,* 522 S.W.2d 848, 849 (Ky.1975)); *see also Matthews v. Commonwealth,* 468 S.W.2d 313 (Ky. 1971); *Pate v. Commonwealth,* 769 S.W.2d 46 (Ky.1989).

13. *Thompson v. Commonwealth,* 56 S.W.3d 406, 409 (*quoting Martin v. Estelle,* 583 F.2d 1373, 1374 (5th Cir.1978)).

14. 56 S.W.3d 406 (Ky.2001).

15. *See Commonwealth v. Duke,* 750 S.W.2d 432 (Ky.1988).

duty of counsel who wishes to claim error to keep current on the law, and to object with specificity so that the trial judge will be advised on how to instruct.[16] The underlying purpose of such a rule is to obtain the best possible trial at the trial level and to call any error to the attention of the trial judge, thereby affording him the opportunity to give the correct instructions.[17] RCr 9.54(2) "requires lawyers to assist the judge in giving correct instructions and disallows an ex post facto objection as a means of obtaining a reversal of the judgment on appeal." [18]

■ While this claim of error is not preserved, this Court may review it for palpable error.[19] The trial court in this case did not read each instruction verbatim, but did carefully explain each instruction and supplemented the oral instructions with a written copy of the instructions for the jurors to follow. This Court has recognized that practical considerations must be taken into account for such technical errors in the course of a trial.[20] In *Muncy v. Commonwealth*,[21] we held that a definition given by the trial court that did not come directly from a legal text and was given orally to the jury in violation of RCr 9.54(1), did not unduly impact an appellant's rights. In the case at bar, the trial court provided the jury a full set of instructions in compliance with the tenor of RCr 9.54(1) and committed no error.

Appellant's third argument is that his convictions for five (5) misdemeanor offenses were barred by the statute of limitations. Appellant argues that he was convicted of five (5) misdemeanor offenses which occurred more than one year prior to the date the proceedings against Appellant were commenced. KRS 500.050(2) states "[e]xcept as otherwise expressly provided, the prosecution of an offense other than a felony must be commenced within one (1) year after it is *committed*." [22]

The crimes in this case were not reported to the police until February 11, 2003, and the indictment charging felony and misdemeanor offenses was returned on April 2, 2003. The misdemeanor offenses are sexual abuse in the second degree, and are identified in the Instructions as the numbers 4, 5, 6, 24 and 25. From the evidence presented, the offenses set forth in Instructions 4, 5, 6, and 24 occurred more than one year before the proceedings commenced, and they were therefore barred by the statute of limitations, KRS 500.050(2). The offense set forth in Instruction 25 however, occurred at some time between 1998 and 2002. This was the only misdemeanor offense that could have possibly been within the one (1) year statute of limitations applicable to misdemeanors. Even if the jury believed this offense to have occurred in 2002 (and therefore not barred by the statute of limitations), the offense also required the prosecution to prove that the victim was under the age of fourteen years old at the time the offense occurred. The offense set forth in Instruction 25 was against Jane Doe. As she turned fourteen on May 20, 2000 (more

---

16. *Id.*

17. *Id.*

18. *Sand Hill Energy, Inc. v. Smith*, 142 S.W.3d 153, 164 (Ky.2004) (*quoting Cox v. Hardy*, 371 S.W.2d 945, 947 (Ky.1963)).

19. RCr 10.26.

20. *Muncy v. Commonwealth*, 132 S.W.3d 845, 848 (Ky.2004).

21. *Id.*

22. KRS 500.050(2) (emphasis added).

than two years prior to the commencement of proceedings against Appellant), it too is time barred. On the other hand, if the jury believed this offense occurred within one year before the proceedings commenced (in 2002) and is not barred by the statute of limitations, Jane Doe could not have been under the age of fourteen when the offense was committed, and an element of the offense would be missing. The jury could not have found that both the age requirement was met and that the offense occurred within the statute of limitations for the offense. The statute of limitations barred the first four misdemeanor charges complained of and the offense set forth in Instruction 25, was either barred by the statute of limitations and/or the age element was not met. Accordingly, these misdemeanor convictions will be reversed for dismissal.

■ Appellant's fourth argument is that the 105 year sentence imposed on him violates the statutory maximum provided by law. The trial court instructed the jury on nineteen (19) different counts against Appellant. The jury rendered guilty verdicts against Appellant for five (5) misdemeanors, ten (10) Class C felonies, and one (1) Class D felony. KRS 532.110 states the law with respect to concurrent and consecutive sentences. KRS 532.110(1) states in pertinent part the following:

> When multiple sentences of imprisonment are imposed on a[n] [Appellant] for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that:
> (c) The aggregate of consecutive indeterminate terms shall not exceed in max-

imum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years.

The highest degree of felony conviction that Appellant received was a Class C felony. Therefore, the longest aggregate sentence Appellant could have received was the maximum length authorized for a Class C felony under the Persistent Felony Offender statute: KRS 532.080. KRS 532.080(6)(b) provides,

> If the offense for which he presently stands convicted is a Class C felony or Class D felony, a persistent felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.[23]

The longest sentence Appellant could receive for the Class C and Class D felonies for which he was convicted was twenty (20) years. The trial court erred in sentencing Appellant to 105 years imprisonment. While the Commonwealth does not expressly concede error, it does admit it would be difficult to find that there was no error. We remand this case with instructions to re-sentence Appellant to imprisonment for a period of years not to exceed twenty years.

■ Appellant's fifth argument is that the trial court erred when it denied his motion for directed verdict for the offense of sexual abuse in the first degree. The offense of sexual abuse in the first degree involved an allegation that Appellant took Sarah Smith's hand and placed it on his pants where his penis was. KRS 510.110(1) states that:

23. KRS 532.080(6)(b).

A person is guilty of sexual abuse in the first degree when:

(a) He subjects another person to sexual contact by forcible compulsion; or

(b) He subjects another person to sexual contact who is incapable of consent because he:

1. Is physically helpless;
2. Is less than twelve (12) years old; or
3. Is mentally incapacitated.[24]

Since Sarah Smith was already fourteen years old when this touching allegedly occurred, the prosecution was required to prove that the touching was accomplished by a means of forcible compulsion. Forcible compulsion is defined as follows:

[P]hysical force *or* threat of physical force, express or implied, which places a person in fear of immediate death of physical injury to self or another person, fear of immediate kidnap to self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition.[25]

The question is whether Appellant's act of placing Sarah Smith's hand on his pants where his penis was, constitutes physical force meeting the definition of forcible compulsion. Prior to 1988, physical force was defined as force that "overcomes earnest resistance."[26] In 1988, the legislature removed the "earnest resistance" requirement, divorcing the force requirement from victim resistance.[27] In 1996, the legislature further amended the

definition to provide physical resistance by the victim is not necessary for the [Appellant's] acts to constitute forcible compulsion.[28]

This Court addressed the question of forcible compulsion in *Miller v. Commonwealth*.[29] The defendant in that case was convicted of raping and sodomizing his daughter 225 times. The victim did not testify that Defendant used physical force or threatened to harm her or another if she refused his sexual advances. Furthermore, the victim never stated that she submitted to Defendant's advances out of fear or harm to herself or another. The only threat she described was that, on one unspecified occasion, Defendant told her they would both get in trouble if she told anyone what they were doing.[30]

*Miller*, however, differs from the case at bar because it dealt with rape and sodomy, both of which require some form of penetration. As for sexual abuse, only contact by force is required, and force cannot be implied. Since sexual contact does not have an implied forcible compulsion element, there must be a close examination of whether physical force or threats of physical force caused the sexual contact, and an offender's intention must be taken into consideration. Here, Appellant's act of taking Sarah Smith's hand and placing it on his penis is required physical force and his intent was to cause the sexual contact between the two. Unlike the victim in *Miller*, Sarah Smith testified that Appellant *forced* her to touch his penis. Sarah

24. KRS 510.110.

25. KRS 510.010(2); *see also* Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law*, § 11–2(a)(2) at 424 (Lexis 1998) (emphasis added).

26. Robert G. Lawson & William H. Fortune, *Kentucky Criminal Law*, § 11–2(a)(2) at 424 (Lexis 1998).

27. *See id.*

28. *See id.*

29. *Miller v. Commonwealth*, 77 S.W.3d 566, 575 (Ky.2002).

30. *See id.*

Smith did not consent or contribute to the act of touching Appellant's penis; it was the sole act of Appellant that caused Sarah Smith's hand to be placed on Appellant's penis. Although there was no duress or resistance on Sarah Smith's part, forcible compulsion has no such requirement. It simply requires physical force *or* threat of physical force. The evidence was sufficient to permit a jury to believe beyond a reasonable doubt that the defendant was guilty.[31] The trial court did not err in denying Appellant's motion for directed verdict.

■■■■ Appellant's sixth argument is that the trial court erred in submitting instructions to the jury for four counts of rape in the second degree and four related counts of incest. Appellant argues that it was error for the trial court to submit instructions on incest and rape occurring in the bathroom at the Appellant's home because the victim did not testify that any act of intercourse occurred in the bathroom. Appellant claims that this issue is preserved by his motion for directed verdict, but it is not. RCr 9.22 states in pertinent part, that a party must "ma[k]e known to the court the action which that party desires the court to take or any objection to the action of the court, and on request of the court, the grounds therefor." [32] Appellant made only a general motion for a directed verdict, which is insufficient to preserve this issue for appeal. This Court has recently reaffirmed that failure to state specific grounds for a motion for directed verdict will foreclose appellate re-

view of the trial court's denial of that motion.[33] In the motion, no specific mention was made of a lack of evidence as to any particular element of the charges; Appellant merely asserted that there was insufficient evidence as to each and every charge pending against him. Without a specific objection, "[t]he trial court was never given an opportunity to address the question of whether there was lack of evidence on this particular element of the offense." [34] Appellant should have objected to the giving of an instruction on the individual charges and stated his reasons and disclosed which elements were missing.

■■■■ Appellant asks this Court to review the issue for palpable error if this Court determines this claim to be unpreserved. Palpable error is one which "affects the substantial rights of a party." [35] This is not palpable error because the location of the offense is not a statutory element of the offense. In the current situation, the location was simply used to identify each offense. Appellant admitted having sexual intercourse with his underage daughter on three occasions at his home; therefore, it was not improper for the trial court to instruct the jury on at least the three incidents of rape and incest at the home. The trial court's mistake in location, if any, does not rise to the level of manifest injustice necessary to justify reversal for palpable error when Appellant admitted three occasions of sexual intercourse at his home. Accordingly, instruc-

**31.** *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991); *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**32.** RCr 9.22.

**33.** *See Pate v. Commonwealth,* 134 S.W.3d 593 (Ky.2004).

**34.** *Hicks v. Commonwealth,* 805 S.W.2d 144, 148 (Ky.App.1990); *see also Anastasi v. Commonwealth,* 754 S.W.2d 860 (Ky.1988).

**35.** *Perkins v. Commonwealth,* 694 S.W.2d 721, 722 (Ky.App.1985); *see* RCr 10.26.

tions were properly given for three incidents of rape in his home.[36]

Appellant also mentions an ineffective assistance of counsel claim in his reply brief, but it was not raised in his initial brief to this Court. Moreover, no such claim has been presented to the trial court. RCr 11.42 is the proper vehicle for presenting such claims and we will await the appeal, if any, to resolve that question.[37]

Appellant's final argument is that the instructions in this case allowed the jury to find Appellant guilty based upon facts that would not support the charged offense. This issue is admittedly unpreserved and as addressed in issues II and VI, a specific objection to the instructions was not made. However, Appellant asks this Court to review for palpable error.

■■■ Appellant argues that the instructions included a time frame of years in which the offenses had to be committed against the victim, but that the time frame included some years in which the victims were older than the maximum age requirement for the offense. The Commonwealth had to prove that the offenses occurred when the victims were under fourteen or sixteen years of age, depending on the offense. Appellant argues the jury instructions denied him his right to a unanimous verdict and the right to have the jury determine he was guilty of every element of the crime. Appellant asserts that the jury could have found that the offense occurred within the time frame given in the instructions, but after the victims had attained an age that exceeded the maximum age element for the offense. For instance, the instructions for rape in the second degree allowed jurors to find that the offense occurred between 1998 and 2002. Since Jane Doe turned 14 on May 20, 2000, the jury could have believed that the required act of sexual intercourse occurred before or after this date.

However, the instructions required the jury to find not only that the offenses occurred within the stated time frame, but also that the victims were less than fourteen or sixteen at the time of sexual contact or intercourse. The age element was a statutory requirement for each of the complained of offenses.[38] The instructions *only* allowed the jury to find Appellant guilty if the act fell within the stated time frame *and* in which the child victim was less than fourteen or sixteen. The instructions were not erroneous or otherwise confusing as to the findings that the jury needed to make. The instructions did not relieve the jury from finding that the act occurred before the victims attained the maximum age requirement because the second paragraph of each of the instructions required that finding. Therefore, there was no palpable error.

Accordingly, we have determined that the trial court erred by not conducting a competency hearing following a court ordered competency evaluation, and that the 105 year sentence imposed on Appellant violates the statutory maximum provided by law. As such, this cause is remanded to the trial court for a retrospective competency hearing and re-sentencing. On all other claims, the judgment of the trial court is affirmed.

GRAVES, MCANULTY, MINTON, and SCOTT, concur.

ROACH, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

---

36. *See* RCr 10.26.

37. *See Humphrey v. Commonwealth,* 962 S.W.2d 870 (Ky.1998).

38. KRS 510.080; KRS 510.050; KRS 510.120; KRS 510.060.

ROACH, Justice, dissenting.

I dissent only as to the majority's holding that requires a retroactive competency hearing. In the appropriate case, I have no qualms with the concept of retroactive competency hearings as set forth in *Thompson v. Commonwealth*, 56 S.W.3d 406 (Ky.2001). However, the majority fails to properly apply *Mills v. Commonwealth*, 996 S.W.2d 473 (Ky.1999), which held in circumstances almost identical to those in this case that it was harmless error to allow a defendant to waive a competency hearing. I also believe that *Thompson* and *Mills* were decided erroneously in part in that they failed to recognize that two separate interests—a statutory right and a constitutional right—are at stake in analyzing whether a defendant is competent, and, more importantly, that different standards govern those interests.

To begin with, while *Mills* held that a competency hearing "cannot be waived by a defendant," 996 S.W.2d at 486, it also held that waiver of such a hearing could be harmless error. *Id.* In Mills, the Court noted that the psychiatric report indicated the defendant was competent to stand trial, that the defendant failed to present any other evidence of incompetence, and that the trial court had ordered the psychiatric examination because the defendant filed a notice of intent to introduce evidence of mental illness, *insanity, or mental defect*, not because of any belief or evidence that the defendant was incompetent. *Id.* Because the defendant "failed to establish any factual basis which should have caused the trial court to experience reasonable doubt as to [his] competence to stand trial ... we h[e]ld that it was harmless error for the trial court to allow [him] to waive the mandatory competency hearing ...." *Id.*

In this case, the trial court ordered that Appellant be examined pursuant to KRS 504.100(2) because his attorney claimed to have concerns about his competency to stand trial. The psychiatrist's report indicated Appellant was competent to stand trial. At a subsequent pretrial hearing, the trial court asked Appellant's attorney whether a competency hearing was necessary. The attorney continued to express concern about his client's "level of ... intellectual functioning," but advised the court about the content of the psychiatric report. Appellant's attorney also told the trial court that he had no reason to believe Appellant would be unable to assist in his defense or was otherwise incompetent. Based on this, Appellant's attorney declined the offer of a competency hearing.

These facts are almost identical to those in *Mills*. The majority even recognizes this case's factual similarity to *Mills*. Yet, rather than applying the harmless error aspect of *Mills*, the majority opinion, relying on the notion in *Mills* that competency hearings are mandatory under KRS 504.100(3), has ordered a retroactive competency hearing for Appellant. But given the factual similarity between this case and *Mills*, even assuming that the reasoning in the latter was correct (meaning that Appellant's waiver of a competency hearing in this case was error), it is clear that Appellant's waiver was harmless error. This alone would cause me to respectfully dissent from the majority opinion.

However, I also believe that Mills, which gave rise to *Thompson, which in turn the majority* relies on to require a retroactive competency hearing, contains a significant error of law. *Mills* correctly notes that "[c]riminal prosecution of a defendant who is incompetent to stand trial is a violation of due process of law under the Fourteenth Amendment" of the United States Constitution. *Id.* at 486. Under the Fourteenth Amendment "once facts known to a trial court are sufficient to place a

defendant's competence to stand trial in question, the trial court must hold an evidentiary hearing to determine the question." *Id.* at 486. *Mills* also stated correctly that the "United States Supreme Court decisions indicate strongly that a defendant cannot waive a competency hearing." *Id.* at 486. Under this federal constitutional standard, once the threshold showing has been made, a defendant cannot waive a competency hearing. However, under the Fourteenth Amendment, a competency hearing is only necessary "where there is substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley,* 445 F.3d 851, 858 (6th Cir.2006). On appeal, the test is " 'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial.' " *Id.* (quoting *Williams v. Bordenkircher,* 696 F.2d 464, 467 (6th Cir.1983)).

Kentucky has a statutory mechanism initiating an inquiry into a defendant's competence to stand trial. A trial court is required to have a defendant examined if it "has reasonable grounds to believe the defendant is incompetent to stand trial . . . ." KRS 504.100(1). The statute requires that after the defendant is examined, "the court shall hold a hearing to determine whether or not the defendant is competent to stand trial." KRS 504.100(3).

In *Mills,* we addressed the interaction between the requirements of the process and our statute in regards to competency hearings. As *Mills* explained, KRS 504.100 is "entirely consistent with these [due process rights under the Fourteenth Amendment] constitutional requirements." 996 S.W.2d at 486. This is clearly the case since the statute, if followed, provides at least as much protection for defendants as the Fourteenth Amendment requires.

*Mills* also correctly held that the plain words of KRS 504.100(3) require a hearing if the court ordered an examination under KRS 504.100(1). *Id. Mills* then held that KRS 504.100(3) "is mandatory and cannot be waived by a defendant." *Id.*

It is this last point where I believe *Mills* went astray. Primarily, I think Mills ignores that the evidentiary threshold at which each right attaches is different. The Fourteenth Amendment right to a competency hearing only comes into play when the judge has "substantial evidence that a defendant is incompetent," *Filiaggi,* 445 F.3d at 858, whereas the statutory mechanism kicks in when the judge merely "has reasonable grounds to believe the defendant is incompetent . . . ." KRS 504.100(1). The Fourteenth Amendment right requires a significantly higher evidentiary burden than the statutory right. I think the difference is akin to that between the notions of "probable cause" and "reasonable articulable suspicion" in Fourth Amendment jurisprudence. Under this framework, it is possible that the evidentiary threshold for the statutory right could be met without that evidence rising to a level sufficient to invoke the Fourteenth Amendment right.

In fact, I think that is exactly what happened in this case. The statutory right in this case was invoked when the defense attorney told the trial court that he had concerns about his client's competency and the trial court ordered that Appellant be examined pursuant to the statute. The court's order was predicated on the statement that "there is reason to believe that the above defendant is not mentally capable of understanding the charge against him/her, or aiding his/her counsel in the trial of said case . . . ." At that point, however, the trial court was relying only on the attorney's representations as to his concerns; the court had been presented

with no other evidence that Appellant was incompetent. While counsel's representations may have been sufficient to start the KRS 504.100 inquiry into Appellant's competency (with the trial court's findings in the regard enjoying a great deal of deference on appeal), absent evidence to support them, they are insufficient to invoke the Fourteenth Amendment right to a competency hearing. Verbalized concerns about a defendant's competency made to the trial court, even by an attorney as an officer of the Court, do not constitute "substantial evidence that a defendant is incompetent."

And no such substantial evidence was later presented to the trial court. As discussed above, after the trial court entered its order under KRS 504.100(1), Appellant was examined by a psychiatrist, whose report was returned to the trial court as required by KRS 504.100(2). The psychiatrist found that Appellant was competent, and Appellant's attorney, having no reason to question the report, accepted it and waived the hearing.

As noted above, due process does not require a competency hearing in every case. Rather, the due process right to a hearing, while perhaps unwaivable, is nonetheless conditional and depends on the existence of substantial evidence of incompetence.[1] As the *Filiaggi* court noted, the appropriate inquiry is whether at the time the trial court declined to order the hearing, "a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Filiaggi*, 445 F.3d at 858. Under this standard of review, I believe that it is clear that even after the psychiatric examina-

tion, there was no evidence before the trial court to create doubt as to Appellant's competency. At that point, Appellant's Fourteenth Amendment right to a competency hearing still had not attached.

Unfortunately, *Mills*, and subsequently *Thompson*, conflated the due process and statutory rights and, in the process, erroneously grafted the much lower statutory evidentiary standard of "reasonable grounds to believe" onto the unwaivable constitutional right. But I think that so long as the due process right has not attached, our inquiry should be limited to the separate, and quite different, statutory right, which Appellant clearly waived in this case.

The easy response to this is that because the statute employs the word "shall" with respect to holding a competency hearing, KRS 504.100(3), it is mandatory once the trial court orders a defendant to be evaluated for competency. This appears to be at least part of the basis of the holding in Mills that "[t]he competency hearing of KRS 504.100(3) is mandatory and cannot be waived by a defendant," 996 S.W.2d at 486, and the majority's reason for ordering the retroactive hearing in this case. But such a construction of the statute appears to require that we ignore RCr 9.24, our harmless error rule, in applying KRS 504.100. In fact, the majority opinion fails even to cite or to discuss the rule and, as discussed above, fails to apply the harmless error aspect of *Mills*.

This construction also ignores our long-standing rule that a defendant "may waive any mere statutory right." *Keith v. Commonwealth*, 195 Ky. 635, 243 S.W. 293, 297 (1922). The rights afforded a defendant under KRS 504.100 are like the vast ma-

---

1. Although it is even further afield than my current concern, I would also note that the unwaivability of a hearing required by the

Fourteenth Amendment does not mean that an erroneous waiver is not subject to harmless error.

jority of other numerous rights that are enjoyed by a defendant—they can be waived. Appellant never asserted his right nor did he object to the lack of a hearing. In fact, his attorney affirmatively declined the offer of a hearing after he saw the psychiatric report about his client.

Ultimately, I think this case is an example of how Justice Wintersheimer characterized *Thompson:* "This is a clear case of appellate counsel desiring to change the actual facts of the trial." *Thompson,* 56 S.W.3d at 411 (Wintersheimer, J., dissenting). Worse still, Appellant's claim amounts to little more than a request that KRS 504.100 be applied blindly and formulaically, without regard to the actual evidence, so as to manufacture error where none exists. I fear that the majority opinion has done just that.

I respectfully dissent.

WINTERSHEIMER, J., joins this dissenting opinion.