NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0263n.06

No. 09-1702

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*Mar 08, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| MARIO C. CURVAN, | ) | |
| Petitioner-Appellant, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| JAN TROMBLEY, WARDEN | ) | |
| Respondent-Appellee. | ) | |

BEFORE: BOGGS and GIBBONS, Circuit Judges; RUSSELL, District Judge[*]

**JULIA SMITH GIBBONS, CIRCUIT JUDGE.** Petitioner-Appellant Mario Curvan, an inmate convicted of armed robbery and felony murder in Michigan, appeals the district court's denial of his petition for *habeas corpus* pursuant to 28 U.S.C. § 2254. Curvan contends that the state court, in holding that his confessions to police were voluntary, unreasonably applied clearly established federal law and unreasonably determined the facts of his case.

For the reasons below, we affirm the district court's denial of Curvan's *habeas* petition.

_____

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

**I.**

On August 21, 2001, the FBI received information that Curvan might have been a witness to the 1998 murder of Frank Bono. The FBI ran a criminal background check and discovered a warrant for Curvan involving an immigration violation. The FBI arrested Curvan for his immigration violation on the morning of August 21, 2001. Various officers from the FBI and the Detroit police department then interrogated Curvan over a series of hours.

FBI Agent Michael Mizer was the first agent to interrogate Curvan. Although Mizer considered Curvan only a witness at this point, he read Curvan his *Miranda* rights anyway. He confirmed that Curvan could read, and Curvan read and initialed a waiver of *Miranda* rights form. Mizer told Curvan that the FBI might be able to help him with his immigration problems. Mizer stated that Curvan never requested an attorney; however, Curvan stated that he asked Mizer twice to speak to an attorney. Up until this point, Curvan was considered only a witness, not a suspect.

After speaking with Curvan for a while, Mizer began to believe that his "story did not make sense." He then asked if Curvan would take a polygraph test, and Curvan assented. Around 4:30 p.m., Investigator Andrew Sims, a polygraph examiner, administered a polygraph test. At the conclusion of the test, Sims told Curvan he thought he was lying. Curvan then told Sims about his role in the murder and wrote a statement. This statement implicated Curvan in the murder of Bono, though not as the killer. After the polygraph, Investigator Ramone Childs spoke to Curvan. He advised Curvan of his rights and Curvan initialed another *Miranda* waiver form after each right he agreed to waive. After signing the waiver, Curvan gave another, more detailed statement that was

also incriminating. Childs stated that Curvan never asked him for an attorney; however, Curvan insisted that he did.

Curvan filed a motion to suppress his two incriminating statements on the grounds that the officers had not halted their interrogation after he had requested an attorney. The state trial court recognized that the accounts of Curvan and the officers differed but noted that

> [i]t is incumbent upon a Court in an evidentiary hearing to determine the facts of the case and assess credibility. And first of all, this Court is going to find that [Curvan] never requested a lawyer during any interrogation at any point that he was in custody prior to the time or concurrent with the time that the two statements at issue were made.

Summarizing the testimony of each one of the officers, the trial court specifically credited their statements that Curvan had not asked for an attorney. Describing Mizer's testimony, the trial court found that Mizer "noted that [Curvan] was of normal intelligence. He was not intoxicated. The defendant never asked for a lawyer." Describing Childs's testimony, the trial court found that "[Curvan] gave [Childs] a statement . . . . There were no threats made to [Curvan], no promises. The defendant never asked to speak to an attorney." The trial court then found that Curvan's statements were voluntary and denied the motion to suppress. The statements were read at trial and Curvan was found guilty of felony murder and armed robbery. Curvan was sentenced to life in prison for felony murder and twenty to forty years for armed robbery.

Curvan appealed to the Michigan Court of Appeals on the grounds that he "invoked his Fifth Amendment Right to counsel and the police failed to scrupulously honor that right by ceasing all interrogation." The Michigan Court of Appeals affirmed the decision of the trial court:

Defendant first argues that the trial court erred in denying his pretrial motion to suppress his custodial statements. We disagree. When reviewing a trial court's determination of the voluntariness of a confession, an appellate court engages in a de novo review of the entire record but will not disturb a trial court's factual findings unless the ruling is found to be clearly erroneous. This Court will affirm the trial court's decision unless we are left with a "definite and firm conviction that a mistake has been made."

Defendant contends that the trial court erred by not applying *Edwards v. Arizona*, 451 U.S. 477, 484; 101 S Ct 1880; 68 L.Ed.2d 378 (1981). Defendant contends that because he requested an attorney while being questioned by the police, all questioning should have ceased. However, the trial court found that defendant signed a *Miranda* waiver on two separate occasions at the request of two different officers. Neither officer remembered defendant requesting an attorney. Following a suppression hearing, the trial court found that "defendant never requested a lawyer during any interrogation at any point that he was in custody prior to the time or concurrent with the time that the two statements at issue were made."

In *Sexton*, [609 N.W.2d 822 (Mich. 2000)], our Supreme Court adopted the dissenting opinion of Judge Murphy which stated, in relevant part, "'Further, if resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court.'" In this case, defendant stated that at some point during questioning he requested an attorney. The officers deny a request was ever made. Additionally, defendant signed two separate Waiver of Rights forms. Because we defer to the trial court's assessment of credibility, we affirm the finding of the trial court that defendant's confessions were voluntary. Additionally, we are not left with a definite and firm conviction that the trial court made a mistake in its finding of fact.

*People v. Curvan*, No. 242376, 2004 WL 1459483, at *1 (Mich. Ct. App. June 29, 2004) (*per curiam*) (internal citations omitted).[1]

---

[1]Curvan did successfully argue that the trial court violated the prohibition on double jeopardy when it sentenced him on both the felony murder and the armed robbery convictions. The Michigan Court of Appeals accordingly vacated Curvan's armed robbery conviction but affirmed his life sentence for felony murder. *Curvan*, 2004 WL 1459483, at *1.

Curvan then filed a petition for writ of *habeas corpus* in federal court under 28 U.S.C. § 2254. He claimed that the trial court's denial of his motion to suppress was contrary to and/or involved an unreasonable application of Supreme Court precedent because he "invoked his Fifth Amendment right to counsel and the police failed to scrupulously honor that right by ceasing all interrogation." The district court denied his petition. It reasoned as follows:

> The record indicates that although Petitioner claims to have requested an attorney on three separate occasions, the record also bears out that three law enforcement officials deny that any such request was made. Since deference is given to the trial court's assessment of the weight of the evidence and the credibility of the witnesses and the trial court findings will not be disturbed unless they are clearly erroneous, *Sexton*, [609 N.W.2d 822 (Mich. 2000)], the Michigan Court of Appeals was correct in relying upon the determination of the trial court regarding the credibility of the Petitioner. Furthermore, there is no evidence, other than Petitioner's self-serving testimony, that he requested counsel during his interrogation.

> Therefore, the record indicates that Petitioner's Fifth Amendment right to have an attorney present during his pretrial interrogation was waived and the decision of the Michigan appellate courts was not contrary to [or] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

*Curvan v. Trombley*, No. 06-CV-13439, 2009 WL 1298201, at *7–8 (E.D. Mich. May 8, 2009).

## II.

Because the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case, we review *de novo* the district court's conclusions on issues of law and on mixed questions of law. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (*en banc*). We also review the district court's factual findings *de novo*, as the district court did not conduct an evidentiary hearing and relied solely upon the state court record. *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

Under AEDPA, a federal court shall not grant a *habeas* petition with respect to any claim that was adjudicated on the merits in the state court unless the adjudication resulted in a decision that was (1) contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court or (2) based on an unreasonable determination of the facts in light of the evidence presented to the state courts. *Montgomery*, 654 F.3d at 676; 28 U.S.C. § 2254(d). To obtain relief, a *habeas* petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)). This "highly deferential standard" requires that determinations made in state court "be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotations marks omitted).

Curvan argues that the Michigan Court of Appeals erred by affirming the trial court's decision to credit the officers' testimony that Curvan had not asked for an attorney. It is well settled that "if an individual wishes to assert either the right to remain silent or the right to the presence of counsel," the police must "scrupulously honor this decision." *McKinney v. Ludwick*, 649 F.3d 484, 489 (6th Cir. 2011). If an "individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)). "[A]fter an individual asks for counsel during interrogation, the government cannot demonstrate a valid waiver of this right absent the 'necessary fact that the accused, not the police, reopened the dialogue with the authorities.'" *Id.* (quoting *Edwards v. Arizona*, 451 U.S. 477, 486 n.9 (1981)).

To prevail, Curvan must overcome the presumption that the state court's factual findings are correct, 28 U.S.C. § 2254(e)(1), by presenting "convincing contrary evidence." *Moore v. Haviland*, 531 F.3d 393, 401 (6th Cir. 2008). And although the voluntariness of a confession is a legal question that falls outside of the § 2254(e)(1) presumption, *Miller v. Fenton*, 474 U.S. 104, 115 (1985), subsidiary factual questions, including a credibility determination at a suppression hearing, are entitled to the presumption of correctness. *See id.* at 112; *Ramonez v. Berghuis*, 490 F.3d 482, 490 (6th Cir. 2007). Here, Curvan plainly fails to overcome the presumption that the state trial court's credibility determination was correct. All of the officers present stated that Curvan did not request counsel. With only his own testimony to support his claim that he did request counsel, Curvan has not presented "convincing contrary evidence" under § 2254(e)(1). *See Moore*, 531 F.3d at 401; *see also Spytma v. Howes*, 313 F.3d 363, 371 (6th Cir. 2002) ("Petitioner has presented no evidence other than his own testimony . . . that would allow us to overcome the presumption of accuracy accorded the [state court] record."). Further, it was not unreasonable for the Michigan Court of Appeals to defer to the credibility determination of the trial judge. The Supreme Court has made it clear that trial judges are to be accorded "great deference" on matters of witness credibility. *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (quoting *Batson v. Kentucky*, 476 U.S. 79, 98 n.21 (1986)).

Curvan also argues on appeal that due to his "lengthy interrogation" and "[t]he use of coercive statements regarding his immigration status," he did not knowingly, voluntarily, and intelligently waive his Fifth Amendment right to an attorney. However, Curvan did not make these specific claims before the Michigan Court of Appeals or the district court. Indeed, the word "coercion" appears nowhere in his *habeas* petition. Moreover, these claims are distinct from

Curvan's argument above that he asked for an attorney: to assert that a *Miranda* waiver is invalid because prior requests for an attorney were not honored is not the same as asserting those waivers are invalid due to the length or coercive nature of a detention. Therefore, Curvan's arguments regarding the length and allegedly coercive nature of the detention amount to a new theory of the case and are waived on appeal. *See Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 752 (6th Cir. 2011) ("[Petitioner-appellant's] argument, despite its surface plausibility, was not presented in the district court . . . . It has therefore been waived."); *see generally Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). But even assuming Curvan has not waived these claims, we fail to see how the trial court's comments on whether the detention was lengthy or coercive cast any doubt upon its factual finding that Curvan was not credible.

## III.

For the foregoing reasons, we affirm the decision of the district court.